*In re* MARRIAGE OF DOROTHY PILLOT, Petitioner and Counterrespondent and Intervenor-Defendant and Appellee, and RALPH PILLOT, Respondent and Counterpetitioner and Intervenor-Plaintiff and Appellant (Arlene Schwandt, Intervenor-Plaintiff and Appellee).

First District (1st Division) Nos. 84—0443, 84—0761, 84—2681, 85—0593 cons.

Opinion filed June 30, 1986.

294

Pamela Lynn Colon, of Chicago, for appellant.

Stephen Levy & Associates, of Chicago (Stephen Levy and Dolores Blackburn, of counsel), for appellee Dorothy Pillot.

Neville, Pappas & Mahoney, of Chicago (Ronald F. Neville, of counsel), for appellee Arlene Schwandt.

JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated appeal brought by respondent, Ralph Pillot, from the judgment of dissolution of marriage entered in favor of petitioner, Dorothy Pillot, and intervenor, Arlene Schwandt; the subsequent order reducing petitioner's child-support payments and assessing intervenor's attorney fees against respondent; and the order denying respondent's petitions for reconsidering the distribution of assets. On appeal, respondent contends that: (1) the trial court erred by: (a) denying his motion for a continuance prior to commencement of trial, (b) refusing to allow respondent to contest the grounds proceedings, (c) determining the amount of past-due child-support and mortgage payments, (d) reducing the amount of child support to be paid by petitioner, (e) assessing respondent with the intervenor's attorney fees, (f) allowing petitioner to remain as beneficiary on respondent's life insurance policies; and (2) the cumulative errors which occurred throughout the dissolution proceeding denied respondent his right to a fair trial. For the reasons that follow, we affirm the judgment of the trial court.

The record reveals the following facts pertinent to this appeal. The parties were married on September 26, 1964, and had two children. On April 13, 1981, petitioner filed her petition for dissolution of the marriage, alleging extreme and repeated mental and physical cruelty. On May 15, 1981, respondent filed an answer denying the allegations and a counterpetition for dissolution of the marriage. Originally, both parties requested temporary and permanent custody of the children. In an order entered May 15, 1981, the court en-

joined the parties from dissipating assets and harming each other and ordered that each party contribute $800 per month toward maintenance of the marital residence, in which both parties continued to reside.

On July 13, 1981, petitioner moved out of the marital residence. As a result, on August 24, 1981, the court entered an order which reduced petitioner's monthly maintenance payment to $500, retroactive to the date she moved out of the marital home; awarded physical possession of the children to respondent, and custody to both parties. Subsequently, on January 18, 1982, the court entered an order which modified the monthly payment portion of the August 24, 1981, order so that petitioner was obligated to pay 27% of her net income for child support plus one-half of the mortgage, insurance and taxes on the marital residence. The order was retroactive to August 24, 1981. Petitioner's obligations to contribute toward maintenance of the marital residence ceased as of the date of the order. However, the obligation of child-support payments continued. On December 8, 1982, the trial court granted Arlene Schwandt's petition to intervene in the dissolution proceedings which sought an equitable mortgage or lien upon the marital residence, on the ground that she allegedly had an outstanding loan with petitioner and respondent, secured by the marital residence.

After numerous continuances, on May 27, 1983, four days before trial was scheduled to commence, Fred Aprati, counsel for respondent, requested and was granted leave to withdraw. Thereafter, on May 31, 1983, David Levy was granted leave to file his appearance on respondent's behalf, but was denied his request for a continuance in order to prepare for trial. On the morning of June 3, 1983, the day trial actually commenced, respondent again requested and was denied a continuance. The court ordered that prove-up of the grounds and evidence on intervenor's claim would commence later that afternoon. Although respondent was in attendance at the morning proceedings when his continuance was denied, he did not appear during the afternoon. Following testimony as to grounds, the court found that grounds had been proved by petitioner and a judgment of dissolution would be entered. Subsequently, testimony commenced on the intervenor's claim and was continued to June 16, 1983.

Meanwhile, on June 10, 1983, David Levy requested and was granted leave to withdraw as respondent's attorney. On June 16, 1983, the trial court granted John Bresingham's motion for leave to file his appearance on respondent's behalf, but denied his motions to vacate the dissolution proceedings of June 3, 1983, and for a contin-

uance. The trial continued and on December 16, 1983, the judgment for dissolution of marriage was entered, which: (1) granted custody of the children to respondent; (2) granted an equitable mortgage or lien on the marital residence to intervenor; (3) divided the marital assets; (4) ordered the marital residence to be sold and the proceeds to be apportioned as stated by the court; (5) determined an arrearage due respondent from petitioner; (6) denied maintenance to either party; and (7) ordered petitioner to pay $528 per month in child support. Subsequently, respondent moved for reconsideration and petitioner moved for modification of the child-support order, alleging extreme alienation of her children caused by respondent's conduct.

Following hearings on the motions, the trial court entered an order which: (1) reduced the child support payment to $350 per month until the older child reaches age 18 and then to $250 per month until the younger child reaches age 18; (2) assessed intervenor's attorney fees against respondent; (3) found no arrearage in support for the period between July 13, 1981, and August 24, 1981; and (4) ordered that arrearage in support shall be paid out of the proceeds of the sale of the marital residence. Subsequently, upon respondent's petition, the court modified the arrearage-payment provision, stating that the arrearage was to be paid out of petitioner's share of the proceeds of the marital residence. Respondent's appeal followed.

Respondent first contends that the trial court erred in denying his request for a continuance when his new counsel had not had sufficient time to prepare for trial and discovery had not been completed. Further, respondent asserts that commencement of the June 3, 1983, proceeding in his absence was an infringement of his due process rights. As stated, petitioner filed her petition for dissolution on April 13, 1981. The record indicates that trial was set originally for October 8, 1981, and was continued 11 times to May 31, 1983. On May 27, 1983, four days before trial was to commence, respondent's counsel, Fred Aprati, requested and was granted leave to withdraw. Aprati's petition specifically stated, *inter alia*, that he had been "contacted by Ralph Pillot who stated that he no longer wished [Aprati's] services and that he wished [Aprati] to withdraw." The petition further stated, "that there was an obvious conflict of personalities that would prevent the undersigned from effectively representing Ralph Pillot."

Subsequently, on May 31, 1983, the law firm of Feiwell, Galper and Lasky, Ltd., filed its appearance on respondent's behalf and moved for a continuance. The motion was denied and the trial date was set for June 3, 1983, at which time respondent filed an emer-

gency motion for a continuance, alleging that his counsel was on trial; lacked time to prepare; and that a deposition had not been completed. The motion was denied and trial on the grounds and intervenor's claim was set to commence later that afternoon.

■ It is well established that a motion for a continuance not based on statutory causes is addressed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed absent evidence of a manifest abuse of discretion or a palpable injustice. (*Benton v. Marr* (1936), 364 Ill. 628, 5 N.E.2d 466; *Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 321 N.E.2d 159; *Reecy v. Reecy* (1971), 132 Ill. App. 2d 1024, 271 N.E.2d 91.) Further, substitution of attorneys at the commencement of trial does not constitute good cause for the granting of a continuance (*In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573), and the denial of further continuances in cases that have been pending for a long period of time and in which numerous continuances have been granted has consistently been upheld in an effort to thwart dilatory tactics (*Leathers v. Leathers* (1958), 13 Ill. 2d 348, 148 N.E.2d 773). Moreover, even if the denial of a continuance is found to be erroneous, it does not constitute denial of due process. *In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573.

In the present case, despite respondent's contentions to the contrary, the record supports petitioner's argument that Aprati's withdrawal as respondent's counsel was done at respondent's request. Consequently, respondent cannot now claim surprise or deprivation of rights as the result of his voluntary action. Similarly, with respect to the retention of new counsel, in our view it was incumbent upon respondent to ascertain his new counsel's availability to commence trial as scheduled.

■ In support of his position, respondent relies on *Reecy v. Reecy* (1971), 132 Ill. App. 2d 1024, 271 N.E.2d 91, *Sobina v. Busby* (1965), 62 Ill. App. 2d 1, 210 N.E.2d 769, and *Neboshek v. Berzani* (1963), 42 Ill. App. 2d 220, 191 N.E.2d 411. In our opinion, his reliance is misplaced. In *Reecy*, the court specifically found that plaintiff's counsel had requested leave to withdraw on his own motion and that plaintiff had not voluntarily changed counsel. In our case, withdrawal was at respondent's request. In *Sobina*, the reviewing court held that the trial court had erred in refusing to grant defendant a continuance to take a deposition when the parties had expressly stipulated that depositions were to be taken. Similarly, in *Neboshek*, the court held that a continuance should have been granted based upon the parties' agreement that plaintiff would secure a continuance in defense coun-

sel's absence so that defendant could file a counteraffidavit. There is no evidence of such stipulations or agreements in our case. Accordingly, we conclude that the trial court properly denied respondent's motions for continuance.

■ Respondent next contends that the trial court further violated his right to due process by preventing him from contesting the grounds during the afternoon proceedings on June 3, 1983. Respondent maintains that he was unaware that the proceedings on the grounds were to commence that afternoon and that he had never signed a pretrial order stating that the grounds were uncontested. We find respondent's argument unpersuasive.

The record is clear that respondent was present in court on the morning of June 3, 1983, when his emergency motion for a continuance was denied and the trial court ordered that proceedings on the grounds and intervenor's claim would commence at 2:15 p.m. that afternoon. Thus, respondent cannot now claim deprivation of rights as the result of his voluntary act not to appear at the afternoon proceedings.

With respect to the pretrial order, respondent presents two contradictory arguments. First, he argues that the pretrial order dated March 2, 1983, upon which the trial court relied in its determination of disputed issues, was unsigned and, thus, invalid. Respondent then argues that his signature on the March 2, 1983, pretrial order was forged, invalidating the order. As a result, respondent claims that the last valid pretrial order is the one dated December 17, 1982, which states that the grounds are contested.

■ Based upon our review of the record, we note that the original of the March 2, 1983, pretrial order is not contained therein. Instead, there is an unsigned photostat copy which, in our view, fails to provide sufficient proof as to the contents of the original order. The responsibility for an adequate record on appeal is placed on appellant (*Dobsons, Inc. v. Oak Park National Bank* (1980), 86 Ill. App. 3d 200, 407 N.E.2d 993), and he cannot seize on the fortuitous disappearance of portions of the record to reverse the trial court's determination (*Nenadic v. Grant Hospital* (1979), 75 Ill. App. 3d 614, 394 N.E.2d 527). Instead, in the absence of a contradictory indication in the record, the reviewing court must presume that the trial court acted properly in reaching its determination. *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 389 N.E.2d 182.

■ In the present case, not only has respondent argued contradictory positions regarding the validity of the March 2, 1983, pretrial order, he has also failed to include the original of the order in the rec-

ord for our review. For these reasons, we defer to the judgment of the trial court and conclude that the pretrial order dated March 2, 1983, which stated that grounds were uncontested was the controlling pretrial order. Accordingly, we hold that the court properly proceeded with the hearing on the grounds in respondent's absence.

Respondent further claims that the trial court violated section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 403(e)) when it failed to wait 48 hours between the determination as to grounds and the commencement of proceedings on intervenor's claim for an equitable lien on the marital residence. Section 403(e) states, in pertinent part:

"(e) Contested trials shall be on a bifurcated basis with the grounds being tried first. Upon the court determining that the grounds exist, the court shall allow 48 hours for the parties to settle amicably the remaining issues before resuming the trial. ***"

■ It is well established that the purpose of section 403(e) is to encourage amicable settlement of peripheral issues between the petitioner and respondent once the grounds have been determined. (*In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 459 N.E.2d 1056.) It does not apply to third-party actions. Therefore, we find that section 403(e) is inapplicable to the resolution of intervenor's action for an equitable lien and the trial court properly proceeded on intervenor's claim following the determination of grounds.

Respondent next contends that the trial court erred in determining the amount of past-due child-support and mortgage payments due him from petitioner. As a general principle, the findings of a divorce court are presumed to be correct and a reviewing court will not set aside those findings unless they are clearly against the manifest weight of the evidence. *Petersen v. Petersen* (1978), 58 Ill. App. 3d 272, 374 N.E.2d 244.

■ In the present case, because the record provides incomplete information as to the number of payments made by petitioner, the amount of those payments, and the specific amount of her obligations, we find it necessary to defer to the judgment of the trial court and to presume that its findings as to arrearages are correct. In reaching this decision, we note that respondent's argument that petitioner had a continuing obligation commencing July 13, 1981, to pay one-half the mortgage is incorrect. The order of January 1982 states that petitioner had been obligated to pay one-half the mortgage from August 24, 1981, to January 1982. However, from January 1982 forward, respondent was to be "responsible for payment of mortgage, taxes and

utilities."

Respondent next contends that the trial court erred in reducing the amount of child support which had been set forth in the judgment of dissolution. Respondent's argument is threefold. First, he asserts that the controlling pretrial order, dated December 17, 1982, waived any contest regarding child support. Second, he maintains that because petitioner did not argue her motion for denial of child support prior to the entry of the judgment of dissolution, the trial court lacked jurisdiction to entertain the motion. Third, in the alternative, respondent asserts that the court abused its discretion in reducing the child-support payments. We disagree.

With respect to the pretrial-order argument, as previously discussed, we find the controlling order to be the one dated March 2, 1983, the record copy of which indicates that child support is a disputed issue. Thus, we find that petitioner did not waive any contest as to that issue.

■ Regarding the jurisdictional argument, we find that the court properly addressed petitioner's motion to modify child support pursuant to section 2–1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–1203) (the Code), which is made directly applicable to judgments of dissolution by section 105 of the Act. Section 2–1203 of the Code states:

"(a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.

(b) A motion filed in apt time stays enforcement of the judgment." (Ill. Rev. Stat. 1985, ch. 110, par. 2–1203.)

Correlatively, section 105(a) of the Act states, in pertinent part:

"(a) The provisions of the Civil Practice Law shall apply to all proceedings under this Act, except as otherwise provided in this Act." (Ill. Rev. Stat. 1985, ch. 40, par. 105(a).)

In the present case, petitioner's motion to modify the order of support was filed on the same date that judgment of dissolution was entered. Thus, we find that it was timely filed pursuant to section 2-1203 and properly addressed by the court.

■ In addition, we do not find that the trial court abused its discretion in modifying the child-support order. In Illinois, the trial court has broad discretion in awarding child support (*Sipich v. Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 696), and its decision will not

be disturbed absent evidence that manifest injustice has been done (*Kasbeer v. Kasbeer* (1959), 22 Ill. App. 3d 218, 159 N.E.2d 840). Our review of the record indicates that the trial court gave careful consideration to the conduct of both petitioner and respondent, the financial capabilities of each, and the conduct, desires, and needs of the two minor children in reaching its decision to reduce the child support payments.

 Next, respondent maintains that the trial court erred in assessing him with intervenor's attorneys fees. The allowance of attorney fees in divorce proceedings rests in the sound discretion of the trial court and its determination will not be altered on review unless there is evidence of an abuse of discretion. (*Sipich v. Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 696.) Where the court finds there has been lack of good faith by one of the parties which results in excessive litigation, attorney fees to cover the unnecessary litigation may properly be assessed against the overly litigious party. *Albert v. Albert* (1972), 10 Ill. App. 3d 539, 294 N.E.2d 695.

 In the present case, despite petitioner's acknowledgment of the debt to intervenor, respondent denied intervenor's claim and the amount due, necessitating litigation of the claim. It was not until intervenor had nearly completed her case in chief, during which she tendered the necessary documentation of her claim, that respondent agreed to the existence of intervenor's debt. Based upon respondent's conduct, we do not find that the trial court abused its discretion in assessing intervenor's attorney fees against respondent.

 Next, respondent argues that the trial court erred in awarding petitioner two life insurance policies on his life, on which she is the named beneficiary, on the ground that petitioner's requisite insurable interest in respondent's life ceased to exist once the marriage was dissolved. In support of his contention, respondent relies on *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557, *Busby v. Busby* (1973), 11 Ill. App. 3d 426, 296 N.E.2d 585, and *Begley v. Miller* (1907), 137 Ill. App. 278. We do not find these cases persuasive of respondent's position. First, both *Fairchild* and *Busby* are factually inapposite. In *Fairchild*, the wife sought to have included as marital property certain health and life insurance benefits enjoyed by her as the result of her husband's employment. The *Fairchild* court found that those benefits did not constitute "property" within the meaning of section 503 of the Act. In *Busby*, the wife was never a named beneficiary on the policies at issue.

Regarding *Begley v. Miller,* we find it to be more persuasive of petitioner's position than of respondent's. Factually, *Begley* is distin-

guishable in that it addresses the issue of the intention of a deceased insured to change the beneficiary on his life insurance policy from his ex-wife to his sister. Upon determining that the insured had not intended to make the change, the *Begley* court stated that a divorce decree does not affect the rights of an ex-spouse as named beneficiary in an insurance policy. The *Begley* court further stated that although an ex-wife's right to receive alimony creates an insurable interest, the cessation of that insurable interest does not affect the provisions of an insurance policy unless the policy specifically mandates such a result. Accord, *Cox v. Employers Life Insurance Co.* (1975), 25 Ill. App. 3d 12, 322 N.E.2d 555 (a divorce decree itself does not affect the rights of the divorced wife as a beneficiary in a husband's life insurance policy).

In the present case, there is no evidence in the record as to the contents of the life insurance policies at issue. Thus, without evidence that the policies provide otherwise, we find that the trial court properly awarded the policies to petitioner, as named beneficiary.

█ Respondent further argues that the trial court failed to place a proper value on the life insurance policies. In raising this argument, respondent again argues conflicting facts. First, he states that the court placed no value on the policies. Then, he argues that the value placed on the policies was inadequate. Moreover, the only legal support offered by respondent to support his position is a Rule 23 opinion which is not accorded any precedential value. (87 Ill. 2d R. 23.) Accordingly, because the mere statement of an issue in a brief without legal support acts as a waiver of the issue on appeal (*Stach v. Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 429 N.E.2d 1242), we find that respondent has waived this issue for review.

█ Finally, respondent maintains that the cumulative effect of numerous errors made by the trial court deprived him of his right to a fair trial. Specifically, respondent contends that the trial court erred in its distribution of the marital property when it: (1) improperly evaluated the life insurance policies; (2) failed to place a value on bank accounts and safety deposit boxes held jointly by petitioner and intervenor; (3) refused to credit respondent with funds withdrawn by petitioner from her credit union; (4) improperly assigned marital debts; and (5) improperly evaluated petitioner's pension plan. We decline to reverse the property distribution of the trial court, finding it to be within the bounds of the court's sound discretion. (Ill. Rev. Stat. 1985, ch. 40, par. 503(c).) Further, we note that with the exception of an inappropriate citation to a Rule 23 order, respondent's argument on this issue is void of any legal authority, rendering it unpersuasive

of respondent's position. It is well established that the court will not research and argue a case for an appellant. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.) Arguments before this court must be supported by proper legal authority.

Within the same cumulative-error argument, respondent further claims that he was "badgered" by his counsel to agree to intervenor's claim and that the trial court erred in not acknowledging the duress imposed upon him. Upon review of the record, we find no support for respondent's assertion of duress.

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.