JOSE MIRELES, Plaintiff-Appellee, v. INDIANA HARBOR BELT RAIL-ROAD CORPORATION *et al.*, Defendants (Marshall I. Teichner, Respondent-Appellant).

First District (1st Division)   No. 86—1458

Opinion filed March 30, 1987.

Donald L. Johnson, of Johnson & Schwartz, of Chicago, for appellant.

Ronald G. Fleisher, of Karlin & Fleisher, of Chicago (David A. Novoselsky, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Jose Mireles, filed a motion to adjudicate the lien of his former attorney, Marshall Teichner, in connection with a $100,000 settlement of his personal injury lawsuit. At the hearing to adjudicate the lien, the trial court found that Teichner did not have an enforceable contingent fee contract with the plaintiff and further found that the reasonable value of Teichner's services was $750 and awarded fees in that amount. Teichner now appeals the trial court's order contending that the award of $750 in fees was inadequate and against the manifest weight of the evidence. Teichner also argues that the trial court abused its discretion by denying Teichner's request to continue the hearing to adjudicate his lien since his attorney was on trial in another matter, and would, therefore, be entitled to a continuance as a matter of right.

In January 1979, the plaintiff retained the law firm of Marshall Teichner, Ltd., to represent him in a personal injury lawsuit against his employer, Indiana Harbor Belt Railroad Corporation. The plaintiff had been injured on the job as a track worker for the defendant, Indiana Harbor Belt Railroad Corporation, and filed a personal injury lawsuit against the employer under the Federal Employers' Liability Act. At their first meeting, attorney Teichner and the plaintiff entered into a contingent fee agreement.

In February 1980, Teichner was suspended from the practice of

law in a matter unrelated to the instant case. At the time of his suspension, Teichner entered into an arrangement with attorney Gary Blank, who agreed to serve as substitute counsel in some of the cases being handled by Teichner, including plaintiff Mireles' lawsuit. Thereafter, the plaintiff signed another agreement consenting to this substitution of attorneys.

In February 1982, Teichner returned to the practice of law and resumed work on the plaintiff's lawsuit, allegedly at Mr. Mireles' request. In May 1983, Teichner again entered into another contingent fee agreement with the plaintiff. This agreement provided for payment of a one-third fee prior to the time the lawsuit was filed and then a fee of 40% after the lawsuit was filed. At the hearing to adjudicate the lien, Teichner waived claim to the 40% fee and sought only to recover a one-third fee but claimed that this one-third fee was applicable to his alleged services before and after filing suit. Also, at the hearing, Teichner called a Chicago personal injury attorney as an expert witness, who testified that a one-third contingent fee was customary in the legal community for personal injury cases.

In January 1985 plaintiff discharged Teichner as his attorney. Immediately prior to taking this action, the plaintiff on December 22, 1984, entered into an agreement with another law firm, Karlin & Fleisher, which provided for a 25% contingent fee in this matter. The Chicago attorney whom Teichner had called as an expert witness at the hearing on his lien had also testified on cross-examination that a 25% contingent fee was a customary fee for attorneys representing "union" plaintiffs in personal injury cases.

At the hearing in the trial court, Teichner claimed that on December 20, 1984, he had received an offer to settle the plaintiff's case for $100,000, but that the offer included a condition that the plaintiff give up any rights he had to continued employment with defendant railroad. He testified that on his recommendation, plaintiff rejected the offer. The record reveals that in June 1985, with the assistance of Karlin & Fleisher, the defendant railroad removed the job condition and plaintiff settled his lawsuit for $100,000.

At the hearing to adjudicate the lien, Teichner also testified concerning the amount of alleged time he had spent working on the plaintiff's case. Teichner stated that from his initial contact with the plaintiff in January 1979 until Mr. Blank assumed responsibility for the case in February 1980, he had devoted approximately 48.5 hours to the plaintiff's case. However, the trial court ruled that Teichner's work had merged with that of Mr. Blank's and, thus, refused to award compensation for this time. The trial court also refused to con-

sider evidence concerning any fees claimed by Teichner prior to his May 1983 agreement with the plaintiff, including any claim by Teichner for compensation during the period of time that Mr. Blank had the case.

From May 1983 until his termination as plaintiff's attorney in January 1985, Teichner estimated that he had spent approximately 120 hours on the plaintiff's case. He claimed that the time was spent in meetings with the defendant railroad to discuss various settlement proposals; that six to eight meetings of two to three hours each in duration were conducted with the plaintiff at Teichner's office and home; that he had continually worked at updating the file; and that there were also frequent telephone conferences with the plaintiff.

The trial court specifically found the testimony of Teichner regarding this claimed amount of time he had spent on the case not to be credible. Ultimately, the court allowed fees for 15 hours of work at the rate of $50 per hour. While the trial court did make an award for this amount, it did so only after it had observed that the court itself had serious doubts about whether Teichner was entitled to any fees at all. The court further found that Karlin & Fleisher had added $25,000 to the value of the case and that the plaintiff was subject to the 25% fee agreement with the firm of Karlin & Fleisher. At the time of its ruling, the trial court did not make any specific finding concerning the amount of the fee that Karlin & Fleisher should be allowed, but retained jurisdiction over the balance of the funds contained in a $35,000 fee escrow which would be left after paying the amount of the award to Teichner.

■ In his appeal Mr. Teichner argues that the trial court's award of $750 in fees was inadequate and against the manifest weight of the evidence. Teichner agrees that the trial court was correct in its ruling that an attorney, following discharge or disbarment, has a right to recover reasonable fees for services rendered up to the time of his disbarment or discharge. (See *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969; *Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 452 N.E.2d 701.) However, Teichner argues the trial court erred when it refused to find that the reasonable value of his services was equal to his claimed customary fee in personal injury cases of one-third of the amount recovered. Specifically, Teichner contends that the reasonable value of a discharged or disbarred attorney's professional services, absent evidence of a customary or hourly wage rate in a personal injury action, should be based solely on this customary one-third contingent fee. Here, in fact, he asserts it has to be equal to that

amount, since all of the necessary work for the settlement had been done by the time he was discharged. Furthermore, Teichner contends that because he failed to keep detailed time records regarding the hours spent on the Mireles case, this percentage fee was the most reliable basis upon which to determine a reasonable fee, in any event.

We find no merit to this argument. Following a review of the record in this case, we agree with the trial court that the value of Teichner's legal services, if any, was far less than his claim of one-third of the amount for which the plaintiff settled his case.

■ In determining the reasonable value of an attorney's fee, a number of factors are to be considered by a trial court which include the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client. *Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 911, 452 N.E.2d 701.

In awarding Teichner $750 in fees here, the trial court did take these factors into consideration. As reflected by the record, Teichner did very little work on the plaintiff's case. The lawsuit was filed in 1980 by attorney Blank. At the hearing below, Teichner conceded that he had not taken any depositions, had not answered any interrogatories, and had not taken any discovery in the case whatsoever. Additionally, it appears that whatever pleadings were filed in the case were filed by Mr. Blank.

Also, the trial court in its review of the 120 hours Teichner claimed were spent in "personal contact" with the plaintiff, found such estimate to be incredible and further noted that the vast majority of the claimed time had actually been spent reassuring the plaintiff that his case was being "properly handled" and attempting to reassure him that there was a valid reason why the case had not been resolved. Teichner himself admitted that the vast majority of these 120 hours had been spent reassuring the plaintiff that his case was being properly handled by him. The trial court concluded that the real reason that the case had not been resolved was because of the quarrelling between Blank and Teichner over who in fact did represent Mr. Mireles. The court further noted that it was this quarrelling which delayed the settlement of the case and, thus, resulted in a great disservice to the plaintiff. Clearly, Teichner was not entitled to be compensated for 120 hours of "public relations" work which was made necessary by Teichner's failure to properly prosecute his client's claim

and who was, thus, justifiably irate and needed reassurance that something would be done to resolve his case. See *Ashby v. Price* (1983), 112 Ill. App. 3d 114, 445 N.E.2d 438.

▮ Moreover, as the trial court noted in rendering its ruling, Teichner offered absolutely no evidence as to any usual, customary, or reasonable hourly fee that might even apply in such circumstances. He chose to rely on the evidence presented concerning contingent fees for successful prosecution of personal injury actions. The trial court reasoned that this had been a "calculated" decision on Teichner's part. The court assigned a $50-per-hour fee only after Teichner refused to offer any testimony or to even suggest to the trial court what an appropriate hourly rate would be for any reasonable time expended. Having made this decision, Teichner should not now be allowed on appeal to attempt to assign a higher value to his efforts when he failed to offer any value at all for them at trial.

Accordingly, we conclude that the trial court had more than sufficient basis to find that the value of Teichner's services here did not exceed the $750 it awarded, and, therefore, the trial court did not abuse its discretion in making that award.

▮ ▮ Teichner's second argument on appeal is that the trial court abused its discretion when it denied a request for a continuance based on Teichner's assertion that his attorney was engaged in a trial in Federal court. In support of his contention, Teichner cites Cook County Circuit Court Rule 5.2(a), which provides as follows:

"A party shall be entitled to a continuance on the ground that his attorney (who filed his trial appearance at the pretrial conference) is actually engaged in another trial or hearing, but only for the duration of the particular trial or hearing in which the attorney then is engaged. No trial will be continued a second time upon the motion of the same party on the ground of prior engagement of his attorney."

The record in this case reveals that on November 25, 1985, the trial court set a hearing date of January 21, 1986. At that time, Teichner was represented by attorney Stephen Walker. On January 21, 1986, attorney Donald Johnson filed an appearance as "additional counsel." Mr. Johnson was granted leave to appear as additional counsel for Teichner subject to the condition that he would not be permitted to withdraw his appearance at any later date. The court order further noted:

"That at the request of Marshall I. Teichner, this hearing is continued to March 12, 1986 at 10 A.M., *such date being final.*"

Mr. Johnson's request for a continuance was presented two days before trial and resubmitted on the eve of trial. Plaintiff's counsel objected to the repeated requests for a continuance and noted there had been no compliance with Supreme Court Rule 231 (87 Ill. 2d R. 231) and also that Mr. Johnson had already been granted a continuance and had selected the March 12 date with the understanding that the case would proceed on that date.

In its consideration of Teichner's motion for continuance, the trial court observed that there had been numerous requests by Teichner to continue this case and, that when Mr. Johnson filed his "additional appearance" and requested a continuance of the previously set trial date, the court's order permitted such a continuance only upon counsel's representation and agreement that that was a fixed hearing date. In denying the continuance, the trial court also noted that the trial date was in fact selected by attorney Johnson.

The record further reveals that at the commencement of the hearing on March 12, Mr. Johnson's associate, Mr. Baer, who had represented Teichner at his deposition on the previous day, advised the court that although Teichner wished to have Mr. Johnson represent him personally, Teichner was "certainly ready to proceed" to trial in his absence.

The law is well settled in Illinois that a motion for a continuance is addressed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal absent evidence of a manifest abuse of discretion or a palpable injustice. (*Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 510.) The denial of further continuance in cases that have been pending for a long period of time and in which numerous continuances have already been granted has consistently been upheld in an effort to thwart dilatory tactics. (*In re Marriage of Pillot* (1986), 145 Ill. App. 3d 293, 298, 495 N.E.2d 1247.) An important factor in the review of a denial of a motion for continuance is whether the party who sought the continuance showed diligence in proceeding with the case. Once a case has reached the hearing stage, no motion for continuance is to be heard without sufficient excuse being shown for the delay in so moving, and the movant must then present especially grave reasons to support the request. (*Martinez v. Scandroli* (1985), 130 Ill. App. 3d 712, 714-15, 474 N.E.2d 456; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 358, 366 N.E.2d 327; Supreme Court Rule 231(f) (87 Ill. 2d R. 231(f)).) Moreover, even if the denial of a continuance is found to be erroneous, it does not, in any event, constitute a denial of due process. *In re Marriage of Pillot* (1986), 145 Ill. App. 3d 293, 298, 495 N.E.2d 1247.

■ Based on the record here, we find no abuse of discretion on the part of the trial court in denying Teichner's motion for a continuance. In so finding, we note the great inconvenience caused to plaintiff as a result of the many previous continuances that had already been granted, and, additionally, we also take note of the fact that a substantial delay was caused in this matter in the first instance by Teichner's quarrelling with attorney Blank over the representation of plaintiff. Furthermore, at the March 12 hearing itself, as stated above, a member of Mr. Johnson's firm was present to represent Teichner and advised the court that Teichner was ready to proceed without Mr. Johnson. Where more than one attorney is involved in a case, the absence of one of the attorneys at the time of trial does not mean that the case should be continued, especially where the attorney who tries the case has had prior involvement in the case and is competent to try it. *Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 510; *McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 739, 450 N.E.2d 5.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and CAMPBELL, JJ., concur.