**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

In the

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT
CHICAGO, ILLINOIS 60604

Submitted December 7, 2006
Decided November 20, 2007

*Before*

Honorable KENNETH F. RIPPLE, *Circuit Judge*

Honorable ILANA DIAMOND ROVNER, *Circuit Judge*

Honorable DIANE P. WOOD, *Circuit Judge*

No. 06-2813

| | | |
|---|---|---|
| PAULA JOHNSON, | ) | Appeal from the United States District |
| *Plaintiff-Appellee,* | ) | Court for the Southern District of |
| *v.* | ) | Illinois |
| | ) | |
| LELAND CHERRY and JAMES MISTER, | ) | No. 02 C 1231 |
| *Defendants.* | ) | |
| | ) | David R. Herndon, *Judge.* |
| APPEAL OF: BARBARA J. CLINITE, | ) | |
| *Appellant.* | ) | |

## O R D E R

Pursuant to Seventh Circuit Internal Operating Procedure 6(b), this successive appeal was submitted to the same panel of judges that disposed of a prior appeal by appellant Barbara J. Clinite. *See Johnson v. Cherry*, 422 F.3d 540 (7th Cir. 2005). Neither of the parties to this appeal has included in her brief a statement indicating that oral argument is needed, *see* Fed. R. App. P. 34(a)(1) and Circuit Rule 34(f), and upon review of the briefs and the record and consideration of the standards set forth in Fed. R. App. 34(a)(2), the panel has determined

unanimously that oral argument is unnecessary. The appeal has therefore been submitted on the briefs and the record.

The current appeal relates to Clinite's petition for a quantum merit award of attorney fees for her work in this litigation. As we noted in our previous decision, Clinite filed this civil rights suit on behalf of plaintiff Paula Johnson in 2002, alleging that the defendant police officers had arrested Johnson without probable cause. Clinite served as Johnson's attorney until June 2004, when Johnson informed her that she was discharging her and engaging new counsel. 422 F.3d at 543. In or about November 2005, following our decision in the prior appeal, Johnson settled her suit against the defendants for $20,000. After learning of the settlement, Clinite filed a petition (supported by her affidavit) with the district court contending that she was entitled to compensation in quantum meruit from the settlement proceeds. R. 67, 77; *see Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 974-75 (Ill. 1979) (when attorney who has contingent fee agreement with client is discharged by client without cause, attorney is entitled to reasonable compensation in quantum meruit for services rendered prior to discharge); *In re Estate of Horwitz*, 863 N.E.2d 842, 846 (Ill. App. Ct. 2007) (same).[1] Clinite's petition did not specify a particular amount to which she believed was entitled, but the attachments to her affidavit indicated that she had incurred costs in the amount of $786.93 and reported a total of 97.5 hours of work on the case which she valued at a rate of $170 per hour (for a total lodestar of $16,575 in fees). R. 67 Exs. A, B. At oral argument on her petition, she suggested that a fee award in the neighborhood of $6,666 would be appropriate, as that amount equaled one-third of Johnson's recovery and as such was the amount to which Clinite would have been entitled (absent her discharge) under her contingent fee agreement with Johnson. R. 101 at 6-7; R. 88 at 3.

The district court awarded Clinite her full costs but limited her fee award to $1,500. R. 88 at 7. Although Clinite had conducted discovery on Johnson's behalf and just prior to her discharge had obtained a settlement offer of $20,000 from defendants – the same amount for which the case ultimately settled – the court concluded that Clinite's work ultimately had not contributed to the settlement of the case. In particular, the court believed that Clinite's refusal to turn over her case file to Johnson's new attorney, Jeffery Green, had prevented Green from building on her work and hampered his efforts to settle the case. R. 88 at 5. Clinite had continued to hold her file pursuant to her retaining lien, and we had recognized her right to assert such a lien in the prior appeal. 422 F.3d at 554-56. Nonetheless, the district court believed that Clinite had prejudiced Johnson's case by standing on her rights and refusing to produce the file. "It is one thing to have a legal right to impress a retaining lien, but quite another to hamper a client's ability to successfully pursue her case, just to insure payment." R. 88 at 5. In the court's view, Clinite could have adequately protected her right to compensation by pursuing a charging

---

[1] The district court had authority to consider Clinite's petition for an award of attorney's fees, even to the extent that her entitlement to fees rests on state law, pursuant to the court's supplemental jurisdiction. 28 U.S.C. § 1367(a); *see Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000).

lien; instead, Clinite had stood upon her retaining lien, to the financial detriment of her former client. *Id.* In taking this path, Clinite had undermined rather than contributed to the successful resolution of the case:

> Ms. Clinite does not deserve the six thousand plus dollars she said she is entitled to. While she did receive an offer to settle this case, Ms. Clinite did not have the confidence of her client to consummate the settlement. Her client discharged her. Thereafter, Ms. Johnson's new lawyer had many, many difficulties getting the case settled, mostly because of his inability to construct a working file. So he settled the case because of his work not Ms. Clinite's. Had she cooperated and turned over her file and the discovery, she could easily have claimed the settlement was due in large part to her work product. She cannot claim any credit for the settlement. The new lawyer was caused to start from scratch and the result was his not his predecessor's. So all of the work Ms. Clinite did was for naught as it did not contribute one bit to the resolution of the case.

R. 88 at 6. The court did acknowledge that Clinite had performed legal services for her client, including the taking and defending of some five depositions, and concluded that she was entitled to some compensation "[f]or that productivity and perhaps some other intangible good she surely must have done for this case[.]" R. 88 at 7. It was for that reason the court awarded her $1,500 in fees, plus her costs. Clinite appeals, contending that the modest size of the fee award is unreasonable.

We review the amount of a fee award deferentially for abuse of discretion. *E.g.*, *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). To the extent that a district court's discretionary determination is based on a factor that is improper, or is inconsistent with the undisputed facts, it is necessarily an abuse of discretion. *See, e.g.*, *U.S. v. Global Distribs., Inc.*, 498 F.3d 613, 620 (7th Cir. 2007); *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 712 (7th Cir. 2005).

On review of the district court's fee decision and the underlying record, we must conclude that the district court abused its discretion in relying on Clinite's assertion of her retaining lien as a basis for its finding that Clinite's work did not substantially contribute to the settlement of the case and that, consequently, Clinite was entitled to fees of no more than $1,500. We reach that conclusion for two reasons: (1) in the prior appeal, we sustained Clinite's right to assert the retaining lien; and (2) the record is devoid of evidence that there was anything material in Clinite's file to which Johnson and her counsel lacked access and that was needed in order to prosecute her case.

First, in faulting for Clinite for pursuing her retaining lien, the district court made certain statements that are in conflict with our prior decision. The court suggested, for example, that Clinite could have adequately protected her interest in compensation by perfecting a charging

lien with the ultimate payor of the settlement in lieu of the retaining lien. R. 88 at 5; *see* 770 ILL. COMP. STAT. 5/1. As noted, this is a suggestion that we specifically rejected in our prior opinion: a charging lien is of use only if the attorney's client succeeds in her lawsuit, and the attorney has no way of knowing in advance whether her client ultimately will in fact prevail. 422 F.3d at 554-55, 555-56. Only in hindsight, with a finalized settlement between the parties, could the district court say that Clinite could have relied upon a charging lien to adequately ensure her right to compensation. The court also observed that by retaining her case file pursuant to her retaining lien, Clinite had delayed and hindered the settlement, to the financial detriment of Johnson. R. 88 at 5, 6. But the court's reasoning reflects the false assumption that if an attorney elects to stand on her retaining lien, the client is faced with a choice between paying the fees her counsel has demanded or doing without the documents in her attorney's file. On the contrary, our prior opinion expressly recognized that the retaining lien is not absolute and may give way to the client's need for the documents in her counsel's possession. 442 F.3d at 555. We simply pointed out that Johnson had not established such a need, and the district court had never conducted an appropriate hearing in order to assess that need. *Id.* at 556.

Indeed, the record reveals no attempt by Johnson and her counsel, at any point following Clinite's discharge, to show that she needed access to one or more of the documents in Clinite's file. There have been broad assertions by Johnson's current counsel, Green, that for want of the file, Johnson was left in a weakened bargaining position and that the settlement was delayed (and perhaps reduced) while Green attempted to reassemble Johnson's case from scratch. R. 82 at 2-3; Johnson Br. at 2. The district court accepted these assertions as true on their face. R. 88 at 4-5. But there is no actual evidence in the record before us that supports these assertions. Green has never identified, for example, what documents he needed from the file in Clinite's custody that were not available from other sources: e.g., from the public court file, from the court reporter(s) who recorded the depositions that were taken in this case, or from the defendants' attorneys. In that regard, Clinite made two noteworthy representations at the fees hearing below that have never been contradicted. First, Clinite stated that Johnson and her counsel had obtained copies of all of the discovery from defendants' counsel, and that Johnson herself retained the original copies of any documentary evidence she had provided to Clinite. R. 101 at 8. A pro se memorandum that Johnson filed earlier in the case appears to support Clinite's representation: the memorandum indicates that Johnson had provided Jeffrey Hammel, the attorney who first succeeded Clinite in representing Johnson and her mother in the instant case and a separate federal suit, with "original confidential medical records[,] discovery, [and] files from Plaintiffs [in] June [and] July 2004"; and that "defense counsel Michael Wagner released all depositions, discovery, [and] filings to Attorney Ham[m]el for him to proceed on [these] cases." R. 25-2 ¶¶ 5, 8. Green presumably was able or would have been able to obtain these documents from Hammel when he succeeded Hammel as Johnson's attorney. Second, Clinite advised the court that her own file contained, in addition to publicly available pleadings, only written discovery, correspondence, and her notes about the case; the file did not include copies of the depositions, which were taken shortly before Johnson discharged Clinite and before she ordered transcripts.

R. 101 at 21-22.[2] The record as it stands therefore suggests that Johnson and Green had access to all of the discovery that had been conducted in the case and to any of the evidence that was originally in Johnson's possession. What they did not have access to were Clinite's notes and her correspondence. We are given no reason to believe that those documents were essential to Green's ability to resolve the case on terms favorable to Johnson.

The record thus does not support the district court's finding that Clinite's retention of the case file pursuant to her retaining lien hindered Green's ability to resolve the case, and that Clinite's entitlement to fees should therefore be limited to no more than $1,500. Clinite has asked this court to determine a reasonable fee amount, and Johnson has not opposed that request. On review of the record and consideration of the relevant factors, *see In re Estate of Callahan*, 578 N.E.2d 985, 990 (Ill. 1991) (quoting *Mireles v. Indiana Harbor Belt R.R. Corp.*, 507 N.E.2d 129, 131-32 (Ill. App. Ct. 1987)), we conclude that Clinite is entitled to a fee award of $3,333. We therefore VACATE the district court's fee award and REMAND the case to the district court WITH DIRECTIONS to award Clinite fees in the amount of $3,333 and costs in the amount of $786.93.

---

[2]Clinite also informed the court that she had brought her file with her to the fee hearing and was willing to submit it to the court for its review. R. 101 at 21. So far as the record reveals, the court did not ask Clinite to do so.