NO. 4-09-0306          Filed 1/27/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Marriage of | ) | Appeal from |
| JOHN MITCHELL PAL, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Champaign County |
|     and | ) | No. 05D627 |
| ANGELA DAWN PAL, | ) | |
|     Respondent, | ) | |
|     v. | ) | Honorable |
| MICHAEL D. GUDGEL, | ) | Arnold F. Blockman, |
|     Intervenor-Appellant. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In March 2009, the trial court issued its judgment for dissolution of marriage, incorporating its denial of intervenor Michael Gudgel's request for attorney fees and costs. Gudgel appeals, arguing the court erred in denying his request for attorney fees and costs under section 508 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/508 (West 2008)). We affirm.

I. BACKGROUND

In the fall of 2005, Gudgel began dating respondent, Angela Dawn Pal. They discussed long-term plans, including marriage. Gudgel spent considerable time with Angela's two boys, Camrin M. Pal, age 6, and Erik M. Pal, age 5. The boys were very comfortable with Gudgel. As Gudgel and Angela's relationship progressed, Gudgel and Angela discussed Gudgel's intention to

become more involved in the boys' lives.

In November 2005, John Mitchell Pal (Mitch), who was married to Angela and was the father of Camrin and Erik, filed a petition for dissolution of marriage. In November 2005, Angela filed a response to Mitch's petition. In January 2006, Mitch filed a petition for temporary custody, asking for temporary custody of the children because Angela was exposing the children to Gudgel, stating Gudgel had been convicted of murder and home invasion. The petition alleged Gudgel was a danger to the children. Soon thereafter, Mitch filed an amended petition for temporary custody containing the same allegations. Gudgel had not been convicted of murder or home invasion. However, he had been convicted of manslaughter, stemming from the death of his ex-wife following his striking her on the back of her neck with a baseball bat.

In January 2006, Angela filed a response to Mitch's petition for temporary custody, denying Mitch's allegations Gudgel was a danger to the children and that he had been convicted of murder or home invasion. Angela also filed her own petition for temporary custody.

In March 2006, the trial court entered a temporary order, awarding temporary custody of the boys to Angela but ordering Angela not to allow the boys to have any contact with Gudgel. In making this restriction, the court noted the

following: (1) many seemingly reputable people thought highly of Gudgel, (2) the guardian ad litem found that the children were very comfortable with Gudgel, and (3) the commission of one horrendous act should not mean that person should be a "pariah" for the rest of his life.  However, the court noted it needed to err on the side of caution.  According to the court:

> "And it's not so much just the 1980 murder, I think it's a combination of some of the other charges.  There was a misdemeanor conviction.  The testimony about depression and post-traumatic stress syndrome.  I just want a professional person to take a look at this and give me an opinion.
>
> *** I don't blame [Mitch] for being concerned about the situation with [Gudgel].  Certainly, it's legitimate to raise those concerns with the [c]ourt."

The court stated it would consider eliminating this condition after a professional evaluation of Gudgel could be performed to determine whether Gudgel posed any danger to the boys and was an appropriate person to be in the same household with the children.  The court ordered Angela to pay for the cost of the evaluation.  Because the parties could not agree on who the evaluator should be, the court, after hearing arguments, determined Dr. Mel French

would be the evaluator.

In May 2006, Gudgel filed a petition to intervene pursuant to section 2-408 of the Code of Civil Procedure (Code) (735 ILCS 5/2-408 (West 2006)). Gudgel alleged he had a real interest in the outcome of the litigation because the court's judgment could impair his ability to interact with Angela's children. According to Gudgel, because he was not a party to the litigation, he was unable to defend himself against the allegations made by Mitch. Further, the court's temporary order effectively prohibited him from having contact with the boys unless he submitted himself and his medical records for a professional evaluation. On the same day he filed his petition to intervene, Gudgel also filed a motion for sanctions and a motion to strike. These motions involved the allegations in Mitch's pleadings regarding Gudgel's criminal history.

In June 2006, the trial court held a hearing on Gudgel's petition to intervene. After hearing arguments, the court allowed Gudgel to intervene over Mitch's objection. The court's order stated Gudgel was "granted leave to intervene through final determination of the issues of custody, visitation, [and] any contribution by [Gudgel]." Later that month, the court denied Gudgel's motion to strike and motion for sanctions, finding sufficient evidence had been presented that Gudgel had been convicted of a serious crime (i.e., voluntary manslaughter)

- 4 -

and that sanctions were unnecessary. After the motions were denied, Mitch moved to amend instanter his amended petition for temporary custody to remove references to convictions for murder and home invasion.

In August 2006, Gudgel filed a motion seeking an order eliminating the no-contact restrictions imposed by the trial court's temporary order filed on March 30, 2006. The motion stated Dr. French had completed his evaluation and had prepared and submitted to the court and to counsel for the parties a written report of Gudgel's psychological evaluation.

Later that same month, the trial court lifted the no-contact restrictions placed on Angela with regard to the children and Gudgel. According to the court, Dr. French's report recommended the no-contact restrictions be lifted immediately. Dr. French's report concluded Gudgel posed no serious danger to the children.

In February 2008, Gudgel filed a motion for attorney fees and costs, seeking reimbursement from Mitch for the $2,525 in fees and costs for Dr. French's evaluation, as well as his reasonable attorney fees and costs as a matter of equity. His motion failed to cite any section of the Dissolution Act.

However, at an April 2008 hearing, Gudgel asserted he was proceeding under the Dissolution Act. At the hearing, the trial court and respective counsel for Gudgel, Mitch, and Angela

engaged in an extensive discussion regarding Gudgel's alleged right to attorney fees under the Dissolution Act. At the beginning of the hearing, the court indicated doubt about whether an intervenor could avail himself of the attorney-fee provisions of the Dissolution Act. The court noted the final contribution provisions appear to be directed at the factors used to determine maintenance or the division of property. The court also stated it believed the attorney-fee provisions were part of the whole concept of leveling the playing field for the respective spouses during the pendency of the dissolution proceeding.

According to the trial court, an intervenor could try to collect attorney fees pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). However, the court noted an intervenor would not have a right to attorney fees regardless of how he fared absent some other statutory right. This led the parties back to a discussion about the applicability of the attorney-fee provisions in the Dissolution Act to an intervenor.

Gudgel argued that as an intervenor he had the same rights as the original parties to the action. According to Gudgel's argument, the trial court could award him attorney fees under the Dissolution Act because the Dissolution Act allows trial courts to reallocate attorney fees among the parties and it does not expressly forbid a court from awarding attorney fees to an intervening party who is not a spouse.

The trial court recognized this was an issue of first impression. The court asked Gudgel's counsel what factors it should consider in determining the reallocation of attorney fees, since the Dissolution Act directed courts to base their decision on "the criteria for division of marital property under this [s]ection 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under [s]ection 504." 750 ILCS 5/5-503(j)(2) (West 2006). Gudgel argued the court should consider equity. The court noted it thought it could consider equity under section 508(b) of the Dissolution Act (750 ILCS 5/5-508(b) (West 2006)). According to the court, this was the only basis it could possibly see for an attorney-fee award to Gudgel. While the court stated it was still having problems with Gudgel's argument because it did not believe Gudgel had the same rights to attorney fees as Mitch and Angela under the Dissolution Act, it later stated it thought section 508(b) might be applicable. In making its ruling, the court stated in part as follows:

> "I don't find any independent proceeding for an Intervenor to obtain attorney fees on an equitable basis under the statute. The only possible way that I see that there could be an attorney fee request is under 508(b) ***. That language is not limited to using factors for division of property or

- 7 -

maintenance or anything of that situation.

So the question is, does the Court find that this proceeding, whereby Mr. Pal sought to have Mr. Gudgel restricted from being around the children in this case *** was for an improper purpose? Was it designed to harass, create unnecessary delay or other acts needlessly increasing the cost of litigation?"

The court then quoted its previous ruling on Mitch's motion for temporary custody:

"'[I]t's the job of the Court, if there's an error here, to err on the side of caution. Because I've got these children and we've had concerns raised about the children being around Mr. Gudgel. It's not so much just the 1980 murder. I think it's a combination of all the other charges. However, I don't blame Mr. Pal for being concerned about the situation with Mr. Gudgel. Certainly, its legitimate to raise these concerns with the Court.'"

The trial court noted it granted Mitch's motion to restrict Gudgel's access to the children until an evaluation

could be performed. As a result, the court stated it would not find Gudgel was entitled to attorney fees pursuant to section 508(b), assuming section 508(b) allowed a trial court to award attorney fees to an intervenor.

In January 2009, Gudgel renewed his request for his attorney fees and costs originally set forth in his February 2008 motion. The trial court denied the motion for the same reasons it used to deny his first request for attorney fees and costs.

On March 31, 2009, the trial court entered a final judgment for dissolution of marriage. The written final judgment expressly noted the denial of Gudgel's second request for attorney fees.

This appeal followed.

## II. ANALYSIS

Gudgel argues the trial court erred in interpreting the Dissolution Act to foreclose an independent proceeding in which a non-spouse intervenor could bring a petition for attorney fees and costs pursuant to section 508 of the Dissolution Act (750 ILCS 5/508 (West 2006)). The issue in this case is one of statutory construction, which we review de novo. In re Marriage of Rogers, 213 Ill. 2d 129, 135-36, 820 N.E.2d 386, 389-90 (2004).

### A. Jurisdiction

Although Mitch does not challenge this court's

jurisdiction, an appellate court has an independent duty to determine whether it has jurisdiction over an appeal. Jackson v. Alverez, 358 Ill. App. 3d 555, 558, 831 N.E.2d 1159, 1162 (2005). The issue as we see it is whether Gudgel should have appealed the denial of his motion for attorney fees and costs after it was denied the first time in a written order in May 2008. At the hearing on Gudgel's motion in April 2008, after orally denying the motion, the trial court discussed whether a finding under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) was appropriate. The court determined it was not appropriate to make a Rule 304(a) finding because Gudgel was still seeking other relief. Part of the relief Gudgel sought was the inclusion of language in the marital settlement agreement concerning his ability to have contact with the children. As a result, we find Gudgel has filed a timely notice of appeal on April 27, 2009, after the trial court entered its judgment of dissolution of marriage on March 31, 2009. See 210 Ill. 2d R. 303(a)(1).

## B. Trial Court's Ruling

The trial court's May 2008 written order offers no explanation as to why it denied Gudgel's motion for attorney fees and costs. However, it appears clear from the trial court's oral ruling in April 2008 it found it could not award attorney fees and costs to Gudgel pursuant to section 508(a) of the Dissolution

- 10 -

Act (750 ILCS 5/508(a) (West 2006)) because Gudgel was only an intervenor. With regard to section 508(b), the trial court never definitively stated whether it concluded a court could award an intervenor attorney fees and costs pursuant to section 508(b) of the Dissolution Act. However, the trial court clearly stated assuming an intervenor could receive attorney fees pursuant to section 508(b), Gudgel was not entitled to them because Mitch did not seek the restrictions on Gudgel's contact with the children for any improper purpose.

Based on our reading of the entire transcript of the April 2008 hearing on Gudgel's motion for attorney fees and costs, we conclude the trial court found it could not award attorney fees and costs to a non-spouse intervenor pursuant to section 508(a), but that it could award attorney fees to an intervenor pursuant to section 508(b) in certain situations. During the hearing, the trial court stated it thought section 508(b) might be applicable to intervenors. The court noted it made sense to award attorney fees to an intervenor when a party or counsel was found to have acted improperly in an effort to harass, cause delay, or needlessly increase the cost of litigation. In addition, the court noted the language in section 508(b) is not limited to using the factors for the division of marital property or for determining maintenance. However, on the merits, the trial court refused to award fees because it found

Mitch's temporary-custody petition was not filed for an improper purpose.

### C. Applicability of Section 508 of the Dissolution Act to Non-Spouse Intervenors

#### 1. Section 508(a)

We next address Gudgel's argument the trial court erred in finding an intervenor is not eligible to collect attorney fees pursuant to section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2006)). Gudgel argues section 2-408 of the Code (735 ILCS 5/2-408 (West 2006)) provides an intervenor has all the rights of an original party in the underlying action. According to Gudgel, one of the rights available to an original party in a dissolution proceeding is the right to petition a trial court for an award of attorney fees. Gudgel argues he is eligible for attorney fees under section 508(a) even though he is not a spouse because section 508(a) refers to parties, not spouses. According to Gudgel, the Dissolution Act distinguishes between spouses and parties. The term "spouse" refers to a party based on his or her connection to the marriage at issue in the dissolution proceeding. On the other hand, according to Gudgel, "party" describes a broader category of litigants. In a divorce case, the spouses are necessarily parties. However, not all "parties" are "spouses." While an intervenor is never a spouse in a dissolution proceeding, an intervenor is a party to the dissolution proceeding by virtue of the plain language of section

2-408 of the Code (735 ILCS 5/2-408 (West 2006)).

Whether Gudgel is eligible to receive attorney fees pursuant to section 508(a) is a question of statutory construction and also a question of first impression. We must determine whether the General Assembly intended for an intervenor to be eligible for attorney fees under section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2006)). Section 508(a) states:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in accordance with subsection (c-1) of [s]ection 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of [s]ection 503. Fees and costs may be awarded to counsel from a former client in accordance with subsection (c) of this [s]ection." 750 ILCS 5/508(a) (West 2006).

The plain and ordinary meaning of the Dissolution Act's language is the best indicator of the legislature's intent.  In re Marriage of Murphy, 203 Ill. 2d 212, 219, 786 N.E.2d 132, 136 (2003).  The statute should be read as a whole with all relevant parts considered.  In re Marriage of Kates, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001).

The General Assembly included a section in the Dissolution Act explaining the purpose and construction of the Dissolution Act, which neither party cites.  See 750 ILCS 5/102 (West 2006).  Section 102 states in relevant part:

"This Act shall be liberally construed and applied to promote its underlying purposes, which are to:

* * *

(5) make reasonable provision for spouses and minor children during and after litigation, including provision for timely awards of interim fees to achieve substantial parity in parties' access to funds for litigation costs[.]"  750 ILCS 5/102(5) (West 2006).

Illinois normally follows the "American Rule," which stands for the proposition that a party is responsible for his or her own attorney fees.  See Brundidge v. Glendale Federal Bank,

- 14 -

<u>F.S.B.</u>, 168 Ill. 2d 235, 238, 659 N.E.2d 909, 911 (1995). In enacting section 508 of the Dissolution Act, the General Assembly wanted courts to be able to ignore the "American Rule" so that a spouse with greater financial resources would not have an unfair advantage in dissolution proceedings. <u>James T. Haddon, Ltd. v. Weiss</u>, 342 Ill. App. 3d 144, 147, 796 N.E.2d 109, 112 (2003).

The purpose of the Dissolution Act is to make reasonable provision for spouses and minor children during and after litigation to achieve substantial parity in the parties' access to funds for litigation costs. See 750 ILCS 5/102(5) (West 2006). Thus, the General Assembly clearly intended section 508(a) of the Dissolution Act to apply to spouses and not intervenors. In addition to the stated purpose found in section 102(5), the language of section 508(a) is telling of the legislature's intent. While the General Assembly used the term "party" in section 508(a), the section only refers to two parties. According to section 508(a):

"The court *** may order any party to pay a reasonable amount for his own or <u>the other</u> party's *** attorney's fees. Interim attorney's fees *** may be awarded from <u>the opposing</u> party ***. At the conclusion of the case, contribution to attorney's fees *** may be awarded from <u>the opposing</u> party in

accordance with subsection (j) of [s]ection 503." (Emphases added.) 750 ILCS 5/508(a) (West 2006).

An intervenor is not an "opposing" party in a dissolution action. The spouses are the "opposing" parties. An intervenor is someone who is merely allowed to join an action in order to assert or protect an interest that may be affected by a court's order.

In addition, in awarding fees under section 508(a), the court is to do so in accordance with section 503(j) (750 ILCS 5/503(j) (West 2006)). The language of section 503(j)(2) (750 ILCS 5/503(j)(2) (West 2006)) refers to an award of contribution "to one party from the other party." (Emphasis added.) Thus, the language of section 503(j)(2) also makes clear only two parties, the spouses, are involved when making an award of attorney fees. Moreover, section 503(j) instructs trial courts to award attorney fees based on the criteria for division of marital property under section 503(d) and, if maintenance is awarded, the criteria for an award of maintenance under section 504. Those factors include such matters as the duration of the marriage, the relevant economic circumstances of each spouse, the value of property assigned to each spouse, et cetera. See 750 ILCS 5/504(a) (West 2006). These factors are not applicable to someone who was not a spouse in the marital relationship. As a result, we find the trial court correctly concluded an intervenor

is not eligible for attorney fees pursuant to section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2006)).

### 2. Section 508(b)

We need not address whether the trial court erred in finding a court can award an intervenor attorney fees pursuant to section 508(b) of the Dissolution Act (750 ILCS 5/508(b) (West 2006)) to affirm the trial court. This court can affirm on any basis found in the record.

Gudgel's only contention is the trial court did not make a legal conclusion with regard to an intervenor's ability to receive attorney fees pursuant to section 508(b). However, as we stated earlier, the trial court did conclude an intervenor can collect attorney fees pursuant to section 508(b). To reverse the trial court we would have to find the trial court erred in its ruling on the merits denying Gudgel attorney fees.

Gudgel makes no argument regarding the trial court's decision on the merits of his claim for attorney fees under section 508(b). In fact, Gudgel specifically states this court does not need to consider whether the trial court's ruling on the merits was correct if this court concludes the trial court found section 508(b) allows an intervening party to recover an award of attorney fees from a party spouse.

Because Gudgel does not challenge the trial court's ultimate ruling on the merits in this case denying Gudgel's

attorney-fee request pursuant to section 508(b), we can affirm the trial court's decision on that ground without addressing the trial court's legal conclusion that a trial court can award an intervenor attorney fees pursuant to section 508(b) of the Dissolution Act (750 ILCS 5/508(b) (West 2006)).  A ruling on the correctness of the trial court's legal conclusion is unnecessary and would be only advisory.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

APPLETON, J., specially concurs.

JUSTICE APPLETON, specially concurring:

While I agree with the result reached by the majority, I write separately to address the trial court's possible confusion here as to whether an intervenor has standing to request attorney fees.  As the majority finds, a finding with which I agree, fees for an intervenor are not recoverable under section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2006)).  They may be, however, recoverable under section 508(b) of the Dissolution Act (750 ILCS 5/508(b) (West 2006)) if they are incurred to defend a pleading filed for an improper purpose. See In re Marriage of Pillot, 145 Ill. App. 3d 293, 495 N.E.2d 1247 (1986).  No such improper purpose was found here.