HARRIS TRUST & SAVINGS BANK *et al.*, Co-guardians of the Estate and Person of Michael La Roi Richard Powell, Jr., a Minor, Plaintiffs, *v.* CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE *et al.*, Defendants—(Nicholas G. Dozoryst II, Trustee in Bankruptcy of the Estate of W. Jason Mitan d/b/a LaSalle Investment, Petitioner-Appellant, *v.* Joseph A. Rosin, Respondent-Appellee).

First District (3rd Division)   No. 82—0653

Opinion filed July 27, 1983.

Nicholas G. Dozoryst II and Edita L. Arambulo Maier, both of Dozoryst & Brustein, of Chicago, for appellant.

Joseph A. Rosin & Associates, Ltd., of Chicago (Joseph A. Rosin, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, Nicholas G. Dozoryst II, as trustee in bankruptcy of the estate of W. Jason Mitan, a disbarred attorney, filed a petition in the above-entitled cause for attorney fees on behalf of Mitan. His claim was alternatively based on (1) a referral agreement between Mitan and attorney Joseph A. Rosin, or (2) *quantum meruit*. Rosin moved for summary judgment, which was granted. Subsequently, the court denied Dozoryst's motion for a rehearing. Dozoryst appeals, contending that (1) summary judgment was improperly granted because there were genuine issues of material fact, (2) the trial court improperly limited further discovery, (3) the trustee's motion for rehearing was improperly denied, and (4) the trial court did not have jurisdiction to offset cash advances against the trustee's claim for attorney fees.

On April 20, 1979, the parents of the minor plaintiff (Michael La Roi Richard Powell, Jr.) retained the law firm of Mitan and Michelotti in connection with a claim of medical malpractice resulting in permanent injury to the minor. Attorney Robert E. McAuliffe was associated with that firm and filed suit on May 29, 1979, against the Chicago College of Osteopathic Medicine. In June 1979 Joseph A. Rosin was retained as trial counsel. In September 1979 the entire file was turned over to him and on December 10, 1979, he and McAuliffe filed an amended complaint naming three doctors as defendants.

On January 15, 1980, Mitan was disbarred for making several material false statements on his application for admission to the bar. (*In re Mitan* (1979), 75 Ill. 2d 118, 387 N.E.2d 278.) The minor's parents then discharged Mitan and McAuliffe and retained Rosin as the sole attorney. Rosin effectuated a settlement of $2,000,000 against the college and the attending surgeons. Suit then proceeded against the on-call, but not present, physician, who was found not guilty by a jury. Attorney fees in the gross amount of $500,000 were awarded. The trial court ordered all persons other than Rosin to file petitions for fees.

McAuliffe filed a petition claiming a portion of the total fee awarded based upon an alleged agreement with Mitan. In response, the minor's parents stated that they never retained McAuliffe and that his involvement was as an associate of Mitan, whom they had discharged. Rosin stated that McAuliffe was entitled to fees which had been fully paid.

In the meantime, a creditor of Mitan had filed a bankruptcy proceeding against him in the Federal court. That court entered a temporary restraining order preventing the payment of all fees and reimbursements in the case at bar. That order was based on statements by McAuliffe that Mitan had an interest in the fees to be paid in this case. After a hearing, the referee in bankruptcy set aside the restraining order and remanded all proceedings to the circuit court of Cook County to resolve all issues relating to attorney fees in this case.

On September 18, 1981, the trustee filed his petition for fees on behalf of Mitan. His petition was based solely on statements made by McAuliffe and claimed, upon information and belief, that Mitan was entitled to 42½% of the fee awarded, based upon the referral fee agreement between Rosin and Mitan, as well as for undefined services performed by Mitan from April to December 1979.

In a suit unrelated to the case at bar, proceedings were pending between Rosin and McAuliffe concerning fees paid by Rosin to McAuliffe in that matter. The proceedings between Rosin and McAuliffe were settled and the latter executed a release and an affidavit in which he stated that his prior statements concerning fees allegedly due to himself or Mitan were false. McAuliffe was paid $25,000 to end further litigation. By stipulation, judgment was entered (1) in favor of Rosin against McAuliffe in the amount of $217,626.12 representing fees paid to McAuliffe in connection with the case at bar and other pending cases, and (2) denying McAuliffe any further attorney fees.

On October 1, 1981, Rosin filed his response to the trustee's petition for fees and also filed a motion to dismiss, incorporating as exhibits the order of the trial court denying fees to McAuliffe, McAuliffe's affidavit and Mitan's affidavit denying any interest or claim to fees or advances made in the case at bar. Subsequently, on October 13, 1981, Rosin filed a motion for summary judgment based on these affidavits and the verified responses of Rosin and of the parents of the minor plaintiff.

On November 18, 1981, the trustee filed his response to the motion for summary judgment, relying on McAuliffe's original allega-

tions concerning fees and on pleadings from the bankruptcy proceedings and on various allegations, conclusions and suppositions. On November 24, 1981, Rosin filed a detailed reply.

At the hearing on the motion for summary judgement, the trustee filed his notice to take the discovery deposition of Stanley Wilcox, an attorney named in the bankruptcy proceedings who had filed a motion objecting to discovery proceedings relating to fees allegedly due Mitan. The court denied further discovery. After arguments were heard, the trial court, on December 18, 1981, issued its memorandum of decision and order granting summary judgment. In his decision, he stated: "Under no set of facts presented to the court, disputed or otherwise, is Mitan entitled to recover any attorney's fees. Nor is there even any suggested possible set of facts that would allow such recovery." The trustee's petition for rehearing was denied on February 18, 1982.

The trustee's claim for fees was based on two grounds: (1) A referral fee agreement between Mitan and Rosin when the suit was assigned to Rosin just before Mitan's disbarment. The trustee alleged that under that agreement the firm of Mitan and Michelotti would be entitled to 42½% of the gross attorney fees. (2) *Quantum meruit* for the value of the services rendered by Mitan and Michelotti up until the time of Mitan's disbarment.

■ We do not find it necessary to determine the effect of Mitan's disbarment on the validity of the referral fee contract as to Rosin. (See *Sympson v. Rogers* (Mo. 1966), 406 S.W.2d 26; Code of Professional Responsibility Rules 2—106, 2—107 (87 Ill. 2d Rules 2—106, 2—107); *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 529-32, 417 N.E.2d 764.) Even if it were valid, it could relate only to legal services rendered by Mitan up to the employment of Rosin by the minor's parents at the time of Mitan's disbarment. The record shows that upon his disbarment Mitan was paid by Rosin an additional $150,000 in complete discharge and release for all or any claims Mitan might have for attorney fees and costs in connection with the case at bar. Thus, Mitan has no claim that he was owed additional fees under the referral agreement. His trustee in bankruptcy has no greater rights. Mitan has been paid and his trustee is entitled to no further fees.

■ We reach the same result as to the trustee's *quantum meruit* claim. After his discharge, an attorney's right to recover fees is limited to reasonable fees for services rendered up to his discharge. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969; *Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 417 N.E.2d 1045.) The same rule applies

to a disbarred attorney; his recovery for fees is limited to the reasonable value of the services rendered up to the time of his disbarment.

In *Stein v. Shaw* (1951), 6 N.J. 525, 79 A.2d 310, the court held that an attorney who was disbarred prior to procuring settlement of a suit commenced under a contingent fee contract was entitled to recover from the client for the reasonable value of his services. The court said (6 N.J. 525, 527-29, 79 A.2d 310, 311-12):

> "We are of the opinion that the plaintiff should be permitted to recover in *quasi* contract for the reasonable value of his services rendered and disbursements made prior to his disbarment, for otherwise the defendant will be unjustly enriched at the expense of the plaintiff. To deprive an attorney of his claim for any and all compensation for services rendered prior to his disbarment when the services are not involved in the unprofessional conduct occasioning disciplinary action, would be inequitable. There is no sound reason in law or morals for permitting the defendant to use the plaintiff's disbarment as an escape from paying him for services rendered or necessary disbursements made by him in her behalf. * * *
>
> If the rule were otherwise, the effect of disciplinary action would inevitably be retroactive, which is not the intent or purpose of imposing discipline. The court, moreover, would never know the extent of such retroactive punishment without an undesirable inquiry as to the extent of the attorney's pending business and the monetary value thereof. It is unthinkable that .punishment should be inflicted by a court so unintelligently. * * * Disbarment is not a form of outlawry. To bring economic considerations into disciplinary proceedings would not only needlessly complicate them, but would in many instances serve to defeat the essential purpose thereof.
>
> We are aware of Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126 (S. Dak. 1926) and In re Woodworth, 85 F.2d 50 (2nd Cir. 1936) which hold to the contrary, but we cannot subscribe to the theory on which they are premised, that withdrawal from a suit by reason of disbarment constitutes a voluntary abandonment of the contract without just cause. Such is actually not the fact in those cases. The contract was not voluntarily abandoned, it was automatically terminated by operation of law, when the order of the court made further performance impossible. While the plaintiff was disbarred because of his own wrongful acts, so far as this defendant is concerned he is guiltless. It is pure fiction to say that he has inten-

tionally and without cause abandoned his contract with her. \*\*\* In our opinion the situation resulting here from the plaintiff's disbarment is not dissimilar to that when an attorney is incapacitated by reason of death, illness or insanity. In such cases it has been uniformly held that because of his inability to perform the contract is discharged, but that the attorney may nevertheless recover in *quasi* contract for the reasonable value of the services rendered, 45 A.L.R. 1135, 1158. Nor is recovery in *quasi* contract here barred by virtue of the express contract for a contingent fee, for as we have indicated that contract was discharged by operation of law when its performance was rendered impossible by the plaintiff's disbarment."

In New York, a disbarred attorney, absent any evidence that he was disbarred for conduct in connection with the case, is entitled to a lien for disbursements and legal services rendered prior to disbarment. *Tiringer v. Grafenecker* (1962), 38 Misc. 2d 29, 239 N.Y.S.2d 567.

The record discloses that all of the services rendered with reference to the minor's claim prior to Rosin taking over the case were performed by McAuliffe. McAuliffe filed a petition for fees, claiming that Mitan was to pay him a portion of Mitan's alleged 42½%. Subsequently, however, as disclosed by affidavit and agreed orders entered in the case at bar and in another matter, he was fully and completely compensated for his services. Other than his services, there is no evidence of any service rendered either by Mitan and Michelotti or by Mitan himself. Further, the evidence shows without contradiction that Rosin had advanced large sums to Mitan not only in anticipation of his referral fee interest in this case but also to satisfy any claim by Mitan for fees. All this was acknowledged by Mitan in his affidavit. He also released in writing any lien he might have had.

Further, the trustee made no allegation as to the necessary factors to be considered in determining the reasonable value of professional services:

" ' "\*\*\* [T]he skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. [Citations.]" *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706 , 711, 355 N.E.2d 86, 90.' " *George v. Chicago Transit Authority* (1982), 107 Ill. App. 3d 784, 787, 438 N.E.2d 498.

The trustee contends that there were genuine issues of material fact to be determined before the trial court could pass on the motion for summary judgment and that the trial court improperly limited discovery. He contends that he should have been allowed to explore other paths concerning payments by check made by Rosin to Mitan and particularly concerning the role of the law firm of Wilcox and Associates. He also contends that after the court had granted summary judgment, it should have granted him a rehearing because of new evidence concerning Wilcox' association with Mitan and Rosin. We disagree with all of these contentions.

McAuliffe, in a deposition in April 1981, referred to money paid to Wilcox. Rosin, in his deposition in October 1981, testified that following Mitan's disbarment in 1980 Mitan waived all interest and right to fees in all cases being handled by Rosin and that he (Rosin) had paid money to Wilcox at Mitan's direction for any interest or claim which he (Mitan) might have in any pending matter. Further, Rosin's checks evidencing payment to Mitan concerning the case at bar were always available to the trustee, who did not request any further discovery until the hearing on Rosin's petition for summary judgment in December of 1981.

With reference to the claim that discovery was improperly curtailed, the law is well settled that a trial judge has wide discretion in controlling the scope of discovery; a reviewing court will not interfere with his rulings on discovery absent a manifest abuse of discretion; there is no abuse of discretion to deny discovery of a subject not relevant to the issues; discovery should be denied where there is insufficient evidence that the requested discovery is relevant. *M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.

■ We have examined the record and find, because it shows that any claims which Mitan might have had for fees had been settled with Rosin, no issues of material fact remained to prevent the granting of summary judgment. We also find that the trial court did not abuse its discretion in limiting further discovery.

■ In his memorandum of decision, the trial court stated that anything that might have been discovered from Wilcox was immaterial, in that it could not empower the court to enforce the agreement and last minute continuances (as were sought here) were not "to be granted for nebulous reasons to engage in remote discovery that might have been accomplished earlier." We agree with the trial court's statement.

We also uphold the trial court's denial of a rehearing which was sought because of new evidence as to Wilcox' association with Mitan

and Rosin.

Finally, the trustee argues that the trial court lacked jurisdiction to offset, against the bankruptcy trustee's claim for attorney fees, prebankruptcy cash advances to the debtor in bankruptcy (Mitan).

■■ In the bankruptcy court, the trustee had sought a temporary restraining order to prevent the trial court in the case at bar from proceeding on the ancillary matter of the determination of attorney fees to Mitan. The referee in bankruptcy recognized the ancillary jurisdiction of the trial court and remanded to that court all further proceedings:

> "That all controversies presented in this proceeding and involved in the Circuit Court of Cook County in the case of *Harris Trust & Savings Bank, et al, plaintiff, vs. Chicago College of Osteopathic Medicine, et al, defendants*, No. 79 L 11377, are within the peculiar knowledge of that court and require the Circuit Court to complete its disposition of such controversies and matters therein without further interference from this Court; this Court therefore abstains from any involvement in the Circuit Court matter and all of the controversies contained therein, until such time as any issues relating thereto may be properly brought before this Court."

Under this remandment order, the trial court in the case at bar properly proceeded to resolve all of the issues (including offsets) involved in the trustee's claim as to Mitan's entitlement to attorney fees and correctly found that Mitan was not entitled to any fees.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and McGILLICUDDY, J., concur.