HENRY RALPH ROKEBY-JOHNSON, Indiv. and on Behalf of all Those Underwriters at Lloyd's, London, Subscribing to Policy Nos. C271, C272, and C283, *et al.*, Plaintiffs-Appellants, v. DEREK BRYANT INSURANCE BROKERS, LTD., Defendant-Appellee.

First District (1st Division)   No. 1—90—2405

Opinion filed May 18, 1992.

Peterson & Ross, of Chicago (Thomas S. White, Gregory D. Hopp, Helen Ryan Savaiano, and Sarah J. Moore, of counsel), for appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker, of Chicago and of New York, New York (Jerry L. McDowell, Elizabeth M. Budzinski, Thomas Wilson, Thomas Hyland, and Thomas Leghorn, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:
Plaintiffs, Henry Ralph Rokeby-Johnson (Rokeby-Johnson), individually and on behalf of all other syndicate insurance underwriters subscribing to policy numbers C271, C272, and C283, and Walbrook Insurance Company (Walbrook), appeal from an order of the trial court granting defendant Derek Bryant Insurance Brokers Ltd.'s (Bryant Brokers') motion to quash and dismiss plaintiffs' complaint for lack of jurisdiction. Plaintiffs filed a breach of contract action seeking damages for losses incurred in connection with a plan of commercial automobile liability and general liability insurance known as the "SIR" program. On appeal, plaintiffs contend that: (1) the trial court improperly limited plaintiffs' jurisdictional discovery under Illinois Supreme Court Rule 201(l) (134 Ill. 2d R. 201(l)); (2) the trial court erred in determining that Bryant Brokers was not "doing business" in Illinois and therefore is not subject to the *in personam* jurisdiction of the Illinois courts; and (3) jurisdiction over Bryant Brokers is proper under an amendment to the Illinois "long arm statute." (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(c).) For the following reasons, we affirm the judgment of the trial court.

The record sets forth the following facts relevant to this appeal. All parties to this appeal are subjects of the United Kingdom. Plaintiffs are insurance underwriters for Lloyd's, London. Bryant Brokers was a reinsurance brokerage company incorporated in the United Kingdom. Plaintiffs filed their amended complaint on June 30, 1988. Therein, plaintiffs claimed that Bryant Brokers' "continuous activities" in Illinois were sufficient to constitute "doing business" in Illinois. Plaintiffs claim that Bryant Brokers, along with Will Darrah & Associates (Darrah), developed the "SIR" program, with the intention that Darrah would issue policies on behalf of the Lloyd's underwriters, and Bryant Brokers would serve as intermediary between Darrah and plaintiffs. Plaintiffs claim that Bryant Brokers entered into an agreement with plaintiffs to monitor and supervise Darrah, and was paid commissions by virtue of plaintiffs' contracts with Darrah. Plaintiffs allege that Bryant Brokers breached its agreement with plaintiffs

by, *inter alia*, failing to provide accurate statements or reports to plaintiffs in connection with the "SIR" program.

Bryant Brokers was served with summons and process on September 27, 1988, in London, England. On October 21, 1988, Bryant Brokers filed a special and limited appearance pursuant to section 2—301 of the Illinois Code of Civil Procedure, along with a motion to quash and dismiss plaintiffs' amended complaint for lack of personal jurisdiction. In its motion, Bryant Brokers stated that on August 3, 1988, Bryant Brokers was sold in its entirety to D.G. Durham International, Ltd. (Durham), an insurance brokering company incorporated in England. Durham is not a party to this suit.

On August 14, 1989, Bryant Brokers filed an amended motion to quash and dismiss and submitted two affidavits in support thereof. The amended motion attacked plaintiffs' jurisdictional allegations on the grounds that the allegations were insufficient on their face and failed to present evidence that Bryant Brokers was "doing business" in Illinois.

In response to Bryant Brokers' motion, and pursuant to Illinois Supreme Court Rule 201(l) (134 Ill. 2d R. 201(l)), plaintiffs propounded discovery requests upon Bryant Brokers pertaining to the issue of jurisdiction. Bryant Brokers responded to plaintiffs' discovery requests, but objected to any discovery prior to 1987, one year prior to the time it was served with plaintiffs' complaint. Thereafter, plaintiffs filed a motion to compel Bryant Brokers to submit additional information.

At the October 24, 1989, hearing on plaintiffs' motion to compel jurisdictional discovery, the trial court found discoverable all information regarding Bryant Brokers' business contacts in Illinois in 1987-1988, the one-year period prior to the date of service of summons. The trial court found that all other information was irrelevant to the jurisdictional issue. In addition, the trial court ruled that plaintiffs were entitled to information predating the one-year period, insofar as it related to any contracts which were entered into by Bryant Brokers that yielded financial benefits within the one-year period. The trial court stated that plaintiffs were not entitled to information relating to transactions that terminated more than a year before the service of process where such transactions were totally completed and there was no longer a contractual relationship existing between Bryant Brokers and some other entity.

Thereafter, plaintiffs issued revised discovery requests and Bryant Brokers responded. Plaintiffs again brought a motion to compel, relying upon jurisdictional discovery obtained in another case pending

against Bryant Brokers.[1] In a hearing on March 16, 1990, the trial court reiterated its limitation on discovery to information relevant to jurisdiction, as defined in the October 24 hearing, and held that plaintiffs could take the depositions of Bryant Brokers' affiants and other relevant witnesses. Plaintiffs did not depose Bryant Brokers' affiants.

On July 19, 1990, the trial court held a hearing on Bryant Brokers' motion to quash and dismiss plaintiffs' complaint. The trial court considered the allegations in plaintiffs' amended complaint, a segment of a deposition transcript of a former director of Bryant Brokers and the two affidavits presented by Bryant Brokers.

In their amended complaint, plaintiffs allege that Bryant Brokers engaged in the following activities: (1) acted as an intermediary in a program of commercial automobile liability insurance written by the Forum Insurance Company of Schaumburg, Illinois; (2) arranged certain binding authorities for Illinois-domiciled brokerage firms; (3) maintained a wholly owned subsidiary in Illinois; and (4) made repeated solicitations and visits of its officers and directors to Illinois. The trial court found that plaintiffs' complaint failed to specify the time period in which these activities occurred, and failed to supply the court with competent evidence suggesting that Bryant Brokers did business through its subsidiary, Bryant Treaty Brokers, Inc.

Plaintiffs also presented to the trial court a portion of the deposition testimony of David Richings, a former director of Bryant Brokers. Regarding a visit in 1984, Richings was asked if he recalled "discussing any items of business on the visit." He responded:

"Well, I don't recall anything specifically, but we would have talked about the insurance business generally and how we could increase our business as we placed it on the London market on their behalf, so it would have been general discussions, but I can't remember anything specific."

The trial court found Riching's testimony indeterminate on the issue of jurisdiction.

Plaintiffs also presented the following documents to the trial court attached to their memorandum in opposition to Bryant Brokers' motion: (1) an undated brochure of the business operations of Bryant

---

[1]In their brief, plaintiffs state that they relied upon discovery obtained in the case of Cassidy v. Forum, 87—L—11451, which was pending in the circuit court of Cook County. Bryant Brokers responds in a footnote in its brief that, although contested, jurisdiction was had over Bryant Brokers in Cassidy based on a "transaction of business" theory, which is not raised by the plaintiffs in the present case. Cassidy is not part of this case and this court does not have access to the records in that case.

Brokers; (2) a list of 29 alleged visits by Bryant Brokers' officers and directors to Illinois between 1982 and 1988; (3) a chart of Bryant Brokers' gross income and its commissions from contracts arranged on behalf of Illinois companies; (4) an incomplete, unsigned letter to the shareholders of Derek Bryant Group, P.L.C., a separate corporate entity; and (5) a segment of the minutes of a Bryant Brokers board meeting held on November 6, 1984, wherein a discussion was had regarding setting up an office in Chicago. In their memorandum, plaintiffs contend that Bryant Brokers' 29 business trips to Illinois between 1982 and 1988 were "highly successful," and that during the same period, Bryant Brokers "extracted" almost $6 million in commissions. The trial court found the above evidence incompetent and without foundation.

In support of its motion to quash, Bryant Brokers presented the affidavits of Stuart Bryant, a former director of Bryant Brokers, and James Scott-Wakeling, an employee in the claims department. Bryant stated that at one time, Bryant Brokers served as brokers to the reinsurance community in London and in other places. On August 3, 1988, the ongoing business and associated assets of Bryant Brokers were sold to Durham, a Lloyd's insurance brokering company incorporated in England. As of that date, Bryant Brokers had no employees; however, pursuant to English law, Bryant Brokers remained on the English Companies' Registrar with certain directors acting in an administrative capacity.

Bryant further stated in his affidavit that Bryant Brokers had been incorporated in and conducted its business in London, and was never licensed or authorized to do business in the State of Illinois. Bryant Brokers never had an office, real property or personal property, post office box number, telephone number, or bank account within the State of Illinois. Further, Bryant Brokers never advertised in Illinois and had no employees or actual or designated agents within Illinois.

Bryant stated in his affidavit that Bryant Brokers' role was to serve as a broker with respect to the insurance placed primarily in the London insurance market. As a brokerage firm, it did not write policies, and payment for services was received only in London. No services were performed in relation to the program in Illinois, and any business of Bryant Brokers before August 1988 would have involved entities seeking the services of Bryant Brokers in London for the placement of insurance or reinsurance in the London market. Scott-Wakeling's affidavit corroborated Bryant's.

In its reply memorandum to plaintiffs' opposition brief, Bryant Brokers responds that no business was derived as a result of the trips to Illinois and that it earned $5 million in commissions from the Forum reinsurance program which ceased in 1985. In addition, Bryant Brokers stated that it divested itself of all interest in Bryant Treaty Brokers, Ltd., in 1986 and had no interest in it after that time.

The trial court granted Bryant Brokers' motion to quash and dismiss, holding that plaintiffs failed to plead sufficient allegations of fact to support their contention that Bryant Brokers was "doing business" in Illinois. The trial court further held that plaintiffs failed to offer any other competent evidence to establish a *prima facie* case of *in personam* jurisdiction of the Illinois courts. Plaintiffs' timely appeal followed.

■ Initially, plaintiffs contend that the trial court erred in failing to consider all of the evidence they offered in support of personal jurisdiction over Bryant Brokers. Plaintiffs' contention is without merit. When a matter is being heard at bench, only competent evidence is considered. (*Wood v. Moody-McMaster, Inc.* (1982), 107 Ill. App. 3d 116, 118, 437 N.E.2d 373, 375, citing *Tanner v. Tanner* (1927), 326 Ill. 302, 157 N.E. 161.) In the present case, the trial court considered the allegations of jurisdiction in plaintiffs' amended complaint and found them facially insufficient because they failed to specify a time period in which the alleged activities occurred and failed to supply the court with any evidence suggesting that Bryant Brokers did business through its subsidiary, Bryant Treaty Brokers, Inc. The court further considered a portion of a deposition transcript and found it indeterminate on the issue of jurisdiction. Plaintiffs offered no counteraffidavits, and the trial court found other evidence offered by plaintiffs lacking in foundation. The trial court also considered the affidavits offered by Bryant Brokers in support of its motion. The trial court properly considered the competent evidence presented in making its determination.

■ Plaintiffs further argue Bryant Brokers' affidavits are insufficient to rebut plaintiffs' *prima facie* case for jurisdiction. In considering a challenge to its personal jurisdiction, a court may receive and weigh affidavits, and such conflicts as do exist in the affidavits and pleadings must be resolved in plaintiff's favor; however, where well-alleged facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary averments in the adverse party's pleadings. *Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 24, 562 N.E.2d

989; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247, 421 N.E.2d 231, 234-35.

Relying upon *Doolin v. K-S Telegage Co.* (1979), 75 Ill. App. 3d 25, 393 N.E.2d 556, and *Continental Nut Co. v. Robert L. Berner Co.* (7th Cir. 1965), 345 F.2d 395, plaintiffs contend that Bryant Brokers' affidavits are insufficient because they do not specifically respond to the allegations in plaintiffs' complaint. In *Doolin,* the court denied defendant's motion to quash because defendant's affidavit avoided reference to certain facts material to the disposition of the case. (*Doolin,* 75 Ill. App. 3d 25.) In *Continental Nut,* the court found affidavits submitted by a defendant insufficient to deny the grounds upon which plaintiff claimed jurisdiction because the affidavits did not respond to plaintiff's specific allegations that defendants had customers and solicited business in Illinois, and failed to deny that they entered into a conspiracy in Illinois which resulted in the publication of alleged libel. *Continental Nut,* 345 F.2d at 399.

■ *Doolin* and *Continental Nut* are distinguishable from the present case, as the affidavits submitted by Bryant Brokers contain sufficient information to rebut plaintiffs' allegations of jurisdiction, and do not avoid facts material to the disposition of the case. Bryant's affidavit states that Bryant Brokers was never licensed to do business in Illinois, that it never had an office, real property or personal property, post office box number, telephone number or bank account in Illinois, never advertised in Illinois, had no employees or designated agents in Illinois, and received commissions only for policies placed in the London market. Moreover, in their brief, plaintiffs admit that Bryant Brokers' affidavits contain unrebutted, competent evidence on the issue of jurisdiction.

■ Next, for the first time on appeal, plaintiffs contend that the affidavits submitted by Bryant Brokers should not have been considered by the trial court because they are conclusory. Issues raised for the first time on appeal will not be considered by a reviewing court. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 230, 552 N.E.2d 973, 978.) As plaintiffs failed to challenge the affidavits in this manner at the trial court level, this issue is waived.

■ Next, plaintiffs contend that the trial court's October 24, 1989, ruling on their motion to compel denied them full discovery of competent evidence relevant to jurisdiction for the period 1982 through 1986. It is well settled that a trial judge has wide discretion in controlling the scope of discovery and that a reviewing court will not reverse rulings on discovery absent a manifest abuse of discretion. (*Harris Trust & Savings Bank v. Chicago College of Osteopathic Med-*

*icine* (1983), 116 Ill. App. 3d 906, 912, 452 N.E.2d 701, 706.) Discovery should be denied where there is insufficient evidence that the requested discovery is relevant. *Harris Trust*, 116 Ill. App. 3d at 912, citing *M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.

Under Supreme Court Rule 201(l):

> "Discovery shall be permitted on the issues raised in a special appearance filed pursuant to section 2—301 of the Code of Civil Procedure, provided such discovery is limited to the court's jurisdiction over the person of the defendant." (134 Ill. 2d R. 201(l).)

(See also *In re Marriage of Falstad* (1987), 152 Ill. App. 3d 648, 652, 504 N.E.2d 908, 911-12.) Plaintiffs' contention that discovery should be expanded is not supported by *Reeves v. Baltimore & Ohio R.R. Co.* (1988), 171 Ill. App. 3d 1021, 526 N.E.2d 404, a case upon which plaintiffs rely. There, the court held:

> "[T]he focus, for jurisdictional purposes, must, we believe, necessarily be upon the time the nonresident defendant became a party to the suit or was served with process. The relevant time frame here then would be from approximately the time the claim arose or occurred up to and including the time the defendant was made party to the suit, and service of process was attempted. *Although we find that the court should review contacts over this entire period, we note that the critical point of the focus of inquiry must be upon the time that the defendant is made a party to the suit and is served with process.*" (Emphasis added.) (*Reeves*, 171 Ill. App. 3d at 1027.)

The *Reeves* court relied upon other cases where courts examined the contacts of the defendant for up to two years but focused primarily on the present, ongoing activities of the corporation in Illinois to find jurisdiction. See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847 (court examined one-year period between time claim arose and suit was filed); *Huck v. Northern Indiana Public Service Co.* (1983), 117 Ill. App. 3d 837, 453 N.E.2d 1365 (court examined contacts of defendant up to two years before tort occurred).

■ In the present case, the record shows that plaintiffs failed to present relevant evidence that Bryant Brokers was engaged in any continuous business activities during the period 1982 through 1986. Plaintiffs contend that Bryant Brokers' directors and officers made 29 "highly successful" business trips to Illinois between 1982 and 1988, and that during the same period, Bryant Brokers "extracted" almost

$6 million in commissions. Bryant Brokers disputes plaintiffs' claims, responding that no business was derived as a result of the trips to Illinois and that the $5 million in commissions earned from the Forum reinsurance program was earned in London, and in any event, ceased in 1985. The trial court stated that contracts completed by Bryant Brokers which were not currently yielding financial benefits were not relevant to ongoing activities of the corporation. Plaintiffs' amended complaint was filed on June 30, 1988. Bryant Brokers was made a party to plaintiffs' suit on September 27, 1988. Because jurisdictional discovery under Rule 201(l) is a limited form of discovery, and plaintiff has failed to show the relevance of extended discovery, we find that the trial court did not abuse its discretion in confining plaintiffs' jurisdictional discovery to the one year preceding the filing of the lawsuit.

Next, plaintiffs contend that the trial court improperly granted Bryant Brokers' motion to quash and dismiss because the facts sufficiently demonstrate that Bryant Brokers was "doing business" in Illinois. Plaintiffs argue that Bryant Brokers arranged contracts for Illinois brokers and that its activities were sufficient to find that it was doing business in Illinois.

■ A nonresident corporation is subject to jurisdiction in Illinois under either the "doing business" rule or the long arm statute. (Ill. Rev. Stat. 1989, ch. 110, par. 2—209; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) The party seeking to impose jurisdiction on a nonresident corporation has the burden of proving that a nonresident defendant is subject to jurisdiction by a preponderance of the evidence. (*Finnegan,* 205 Ill. App. 3d at 24.) A reviewing court may not disturb the trial court's determination regarding *in personam* jurisdiction unless such finding is against the manifest weight of the evidence. *Finnegan,* 205 Ill. App. 3d at 25.

■ Under the doing business rule, a nonresident corporation is considered to have consented to jurisdiction if it is doing business in the State. (*Cook,* 87 Ill. 2d 190, 429 N.E.2d 427; *Dal Ponte v. Northern Manitoba Native Lodges, Inc.* (1991), 220 Ill. App. 3d 878, 581 N.E.2d 329.) There is no all-inclusive test for determining what activity amounts to "doing business"; however, the standard is quite high and requires a showing that the corporation is conducting business of such character and extent as to warrant an inference that the nonresident corporation has submitted to the jurisdiction and laws of the State. (*Cook,* 87 Ill. 2d at 201.) "Doing business" for jurisdictional purposes means carrying on business activity within a State " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " (*Cook,* 87 Ill. 2d at 202-03, quoting *Tauza v. Susquehanna*

*Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917.) Mere solicitation by employees whose only authority is to solicit business in Illinois is not enough. (*Cook*, 87 Ill. 2d at 201.) Although there may be no such all-inclusive test, almost all Illinois cases determining the existence of personal jurisdiction over foreign corporations have based their findings upon the existence of factors such as offices or sales activities in Illinois. *Huck*, 117 Ill. App. 3d at 839-40.

In reliance on *Colletti v. Crudele* (1988), 169 Ill. App. 3d 1068, 523 N.E.2d 1222, and *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155, plaintiffs argue that the revenues generated by Bryant Brokers' Illinois commissions were sufficient to establish "doing business." Plaintiffs contend that the present case is similar to *Colletti*, because the court there found that the defendant was "doing business" even though the revenues generated by its business with Illinois constituted less than 1% of its gross income.

However, plaintiff selectively interprets the holding of *Colletti*, as the court did not find that defendant was "doing business" based solely on its Illinois revenues or lack thereof. In making its determination, the court there found significant the facts that the defendant had an agent to accept service in Illinois, passed through Illinois a total of 54 times over a period of three years and stopped in Illinois approximately 30 times to procure business during that period and had consented to jurisdiction in three similar cases arising from the same occurrence.

The *Connelly* court held that the substantial profit-making activities of a nonresident manufacturer in Illinois invoke the benefits of the forum State so that when its goods cause injury because of a defect, Illinois courts will hold the defendant amenable to service of process. However, in *Natural Gas Pipeline Co. v. Mobil Rocky Mountain, Inc.* (1986), 155 Ill. App. 3d 841, 508 N.E.2d 211, this court distinguished a product defect action from a contract action and held that *Connelly* does not extend to contract actions. Thus, substantial revenues from sales in Illinois, as relied upon in *Connelly*, are not enough to satisfy "doing business" in a contract action.

The present case, like *Natural Gas,* is a contract action. Under the proper analysis, there is no showing here that Bryant Brokers was "doing business" in Illinois. The record does not reveal that Bryant Brokers actively procured business from Illinois. Plaintiffs allege that Bryant Brokers "made repeated solicitations and visits of its officers to Illinois"; however, under *Cook* and its progeny, mere solicitation does not vest jurisdiction in the Illinois courts. At the hearing on Bryant Brokers' motion to quash, plaintiffs submitted a list of 29

alleged visits by Bryant Brokers' officers and directors to Illinois between 1982 and 1988. However, this list gave no indication as to what the visits were about or whether, in fact, they actually took place. Plaintiffs contend that these visits were "highly successful"; however, this claim is disputed by Bryant Brokers. Moreover, there is no evidence that Bryant Brokers had a registered agent, offices, or employees in Illinois.

Finally, *Asset Allocation & Management Co. v. Western Employers Insurance Co.* (7th Cir. 1989), 892 F.2d 566, is unpersuasive. There, the trial court had determined that personal jurisdiction existed under the Illinois long arm statute. On appeal, the Seventh Circuit held that there was no jurisdiction under the long arm statute, but remanded the case to the trial court for a determination of jurisdiction under the "doing business" doctrine. In so doing, the court noted that the defendant had sold insurance in Illinois on a large scale 1½ years prior to the filing of Asset's suit and continued to pay losses and collect premiums even though it wrote no new policies. The court directed the trial court to take into account whether defendant was still doing "substantial business" at the time Asset brought its suit, because the record was unclear on this issue. *Asset Allocation*, 892 F.2d at 571.

■■ In the present case, there is no evidence before the trial court that Bryant Brokers was doing "substantial business" in Illinois at the time plaintiffs brought their suit. According to Bryant Brokers, the Forum reinsurance program, from which it earned $5 million, ceased in 1985. Further, Bryant Brokers was never registered in Illinois and did not write insurance policies. Plaintiffs brought suit in June 1988, and Bryant Brokers ceased to exist on August 3, 1988, more than one month prior to receiving service of summons. Plaintiffs have not pinpointed any conduct engaged in by Bryant Brokers to vest "doing business" jurisdiction in the Illinois courts.

■■ In the alternative, plaintiffs contend Illinois may have personal jurisdiction over Bryant Brokers under an amendment to the Illinois long arm statute, section 2—209(c), which makes the statute coextensive with due process. Section 2—209(c) states:

> "(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(c).)

While courts have held that section 2—209(c) is coextensive with due process (*F M C Corp. v. Varonos* (7th Cir. 1990), 892 F.2d 1308;

*L.B. Foster Co. v. R.R. Service, Inc.* (N.D. Ill. 1990), 734 F. Supp. 818), the amended statute became effective after the suit was filed in the present case and is thus inapplicable to Bryant Brokers. (See *L.B. Foster*, 734 F. Supp at 820 n.4.) Moreover, as plaintiffs never raised this issue in the trial court, it is waived. *Mittleman*, 135 Ill. 2d at 230.

■■■ Finally, plaintiffs argue that Bryant Brokers has purposely availed itself of the privilege of conducting its activities within Illinois pursuant to the Federal due process standard of minimum contacts.

The rationale underlying the due process requirement of "minimum contacts" is that the defendant must be able to foresee the possibility of being haled into a forum court given its conduct and connection with the forum State. (*Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183.) The trial court found that there was

> "no basis for this court to conclude that the defendant's contacts with the state would be sufficient to satisfy the traditional notions of fair play and substantial justice, as would be required to exercise the long arm jurisdiction over this defendant."

As the record indicates the plaintiffs have failed to make a *prima facie* showing as well as prove by a preponderance of the evidence that Bryant Brokers was "doing business" in Illinois. Bryant Brokers' contacts with the Illinois forum are not such that it would reasonably anticipate being haled into court.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.