PAULA VICTORIA HULSEY *et al.*, Plaintiffs-Appellees, v. JAYCE SCHEIDT *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—92—1028, 1—93—0043 cons.

Opinion filed January 11, 1994.—Rehearing denied March 16, 1994.

Querrey & Harrow, Ltd., of Chicago (Julie L. Trester and Michael Resis, of counsel), for appellant Appleton Company, Inc.

Alholm & Monahan, of Chicago (Anne M. Oldenburg, of counsel), for appellant Jayce Scheidt.

Pappas, Power & Marcus, of Chicago (James J. Bigoness, of counsel), for appellant Chrysler Corporation.

Corboy & Demetrio, P.C., of Chicago (Phillip H. Corboy, Michael K. Demetrio, Todd A. Smith, and David A. Novoselsky, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Appleton Company, Inc., brings an interlocutory appeal pursuant to Supreme Court Rule 306(a)(1)(iii) (134 Ill. 2d R. 306(a)(1)(iii)), seeking review of the circuit court's denial of its motion to quash service for want of jurisdiction over its person. In a separate but now consolidated interlocutory appeal, defendants Jayce Scheidt and Chrysler Corporation appeal from the circuit court's denial of their joint motion seeking a dismissal of plaintiffs' action and a transfer to Lake County, Indiana, under the doctrine of *forum non conveniens* pursuant to Supreme Court Rule 306(a)(1)(ii). (134 Ill. 2d R. 306(a)(1)(ii).) We affirm in part, reverse in part and remand the action to the circuit court.

On September 15, 1990, at approximately 3 a.m., plaintiff Paula Hulsey was a passenger in a 1988 Plymouth Voyager Minivan which was designed, manufactured, distributed and sold by defendant Chrysler Corporation, a Delaware corporation which does business on a national and global scale. The van was operated by her husband and coplaintiff Michael Hulsey, who was proceeding eastbound on U.S. Route 30 through Merrillville, Indiana. The Hulseys are citizens of Georgia, residing in the town of Decatur.

When the van reached the intersection of U.S. 30 and Indiana State Route 53, which in Merrillville is known as Broadway, it was struck by a vehicle which was owned and maintained by defendant Appleton Company, Inc., a corporation organized under the laws of Indiana, and which was being operated by Appleton's employee, defendant Jayce Scheidt, a citizen of Indiana. The front of Scheidt's truck impacted with the rear of the van on its driver's side. At the moment of impact, the mechanism which was designed to secure the rear door to the frame and to ensure that it did not become unlatched failed when Paula struck it. After the force of Paula's contact opened the rear door, she continued outward, propelled by the rapid acceleration of the van. The Merrillville police department accident investigator estimated that she vaulted approximately 60 feet through the air before striking the pavement.

When Scheidt was interviewed at the scene of the accident, he reported that he hit the van because he could not stop due to a complete failure of his brakes. The police also interviewed two other witnesses to the accident: the first, Johnnie Gill, a resident of Gary, Indiana, and the other, Catherine Frazier, a resident of Hammond, Indiana. In addition, all the police officers who responded to the

report of the accident or who later investigated it were in the employ of the Merrillville police department and residents of Indiana. After the department's investigation of the accident was complete, the wreck of the van was taken to a garage in Merrillville; and at the time this matter was heard in the circuit court, it was stored at the home of a relative of plaintiffs in Lansing, Illinois.

Paula was initially treated by paramedics of the Lake County, Indiana, emergency medical services department who then transported her to Methodist Hospital in Merrillville. She suffered an injury to her spinal cord, completely paralyzing her below the neck. After stabilizing treatment in Indiana, she was transferred to Northwestern Memorial Hospital in Chicago, where she remained from September 15, 1990, until October 19, 1990. Thereafter, she was taken to The Spain Rehabilitation Center in Birmingham, Alabama, for further treatment. While in Chicago she was seen and/or treated by 33 different medical professionals and saw nine additional doctors while in Alabama.

Plaintiffs filed the instant action in the circuit court of Cook County. After being served by summons at its corporate office in Indiana, Appleton moved to quash service, maintaining that as an Indiana corporation with its principal activities in that State, it could not be considered to be "doing business" in Illinois as required by section 2—209(b)(4) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—209(b)(4)). In a deposition taken to determine the degree of Appleton's business involvement in Illinois, Charles Appleton, an officer and a 50% shareholder of the corporation, disclosed that although the vast majority of the company's revenue came from the installation, service and wholesaling of garage doors in Indiana, it did perform some work in Illinois. In fact, in 1986 or 1987, the corporation was notified by the Illinois Department of Revenue that it had to become registered for tax purposes in Illinois and thereafter remit to the State a tax as a percentage of the revenue earned from sales in Illinois. Appleton roughly estimated that the business it did in Illinois provided 1% to 2% of the corporation's gross revenue, a percentage which had remained constant even after the corporation initiated a business expansion campaign in the late 1980's aimed at potential customers in Illinois as well as those in Indiana.

In order to facilitate this campaign, Appleton advertised in Illinois. It purchased space in regional and municipal yellow pages in Illinois, focusing on southeast suburban communities such as Lansing, Calumet City and South Holland, Illinois. The phone number listed in these directories carried the suburban Chicago area code, and the number to be dialed was a Harvey, Illinois, exchange,

which was then automatically forwarded to Appleton's sales agents in Indiana. The corporation also subscribed for two years to a periodical which listed construction projects in Illinois and other Midwest States for which bids were being accepted from subcontractors like Appleton. Although the corporation employed a three-man full-time sales force along with a fourth individual who worked part-time, its salesmen did not actively solicit customers in Illinois, but would enter the State only in order to respond to phone inquiries made by Illinoisans.

Appleton then reviewed the ledger the corporation kept for sales tax accounting, which showed that during the times relevant to this case, the corporation sold garage doors to a number of Illinois homeowners and businesses. He also disclosed that his corporation had a "semi"-exclusive dealings agreement with Raynor Manufacturing, an Illinois company which supplies Appleton with the garage door sections it installs. Pursuant to this "gentlemen's" agreement, Raynor would ensure that no other installer of its overhead doors would encroach upon a sales territory within a 15-mile radius of Griffin, Indiana, which has been preserved for Appleton. The area embraces a salient which extends into Illinois approximately five miles at its deepest penetration, and includes the communities in which Appleton advertises in the yellow pages. As another aspect of its relationship with Raynor, agents of Appleton travel each week to Rockford, Illinois, in order to pick up from Raynor the overhead doors Appleton contracts to install.

After considering the arguments of the parties, the circuit court denied Appleton's motion to quash service, finding that the corporation was "doing business" in Illinois. Appleton then timely applied for leave to file this interlocutory appeal, which we granted.

Subsequently, defendants Chrysler Corporation and Jayce Scheidt moved the circuit court seeking a dismissal of the action and a transfer to Lake County, Indiana, under the principles of *forum non conveniens*. The court expressed the view that since this was a products liability action, the majority of the witnesses would be experts, and according to the court, "no one knows where they are coming from." In addition, with regard to Paula's injuries, the court considered it significant that most of her doctors were either in Chicago or Alabama. He also mentioned that the van was stored in Lansing, Illinois. The court therefore denied the joint motion for dismissal and transfer, after which we granted defendants' petition for leave to file this interlocutory appeal, and consolidated it with Appleton's pending appeal.

I

■ The first issue presented in this appeal is whether Appleton Corporation participates in sufficient commerce with Illinois so that it may fairly be considered to be a corporation "doing business" within the State as that phrase is used in section 2—209(b)(4) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—209(b)(4)), and thereby make itself subject to the jurisdiction of the courts of this State. A corporation not registered in Illinois, such as Appleton, will nevertheless be subject to an assertion of *in personam* jurisdiction by our courts if its conduct of business within this State is "of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws" of Illinois. (*Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355, 358; accord *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 201, 429 N.E.2d 847, 852.) In *Cook Associates*, the court, borrowing from Justice Cardozo, suggested that this standard is met when the corporation operates within Illinois " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Cook Associates*, 87 Ill. 2d at 203, 429 N.E.2d at 853, quoting *Tauza v. Susquehana Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917; *cf. Chandler Leasing Co. v. Trus Joist Corp.* (1980), 90 Ill. App. 3d 875, 878, 414 N.E.2d 15, 18 ("A corporation is said to be 'doing business' in a State when there is the transaction of ordinary business in which the corporation is engaged in the exercise of some of its charter powers"), citing *Hertz Corp. v. Taylor* (1959), 15 Ill. 2d 552, 155 N.E.2d 610.

The decision as to whether a corporation's in-State activities are sufficiently permanent and continuous to qualify as "doing business" is to be made on a case-by-case basis and depends fully on the unique situation presented by a particular case. (*Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 466 N.E.2d 217.) However, this conclusion cannot be mechanistically reached. As the *Maunder* court conceded: "We have been unable to fashion a precise test or talismanic phrase to guide us in this task." (*Maunder*, 102 Ill. 2d at 351, 466 N.E.2d at 221.) Nonetheless, the unique and purportedly decisive talisman upon which Appleton fixates is the revenue it derives from sales in Illinois as a percentage of its gross revenue. It reasons that because its Illinois sales make up a paltry 1% or 2% of its revenue, its relationship with the State is *de minimis* and it therefore cannot be considered to be doing business in this State for jurisdictional purposes.

However, no case has yet held that revenue derived from this State is the dispositive variable in resolving whether *in personam* jurisdiction may be asserted against a foreign corporation. In fact, two

cases have rejected a plaintiff's contention that jurisdiction is proper in Illinois when grounded solely on a foreign corporation's substantial earnings in this State. In *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.* (1992), 230 Ill. App. 3d 308, 594 N.E.2d 1190, an action in which all the parties to the suit were citizens of the United Kingdom, the plaintiff brought a breach of contract action on behalf of himself and all other members of an insurance syndicate which had attempted to sell its risk through the defendant, a reinsurance broker. The defendant moved to quash service, arguing that Illinois did not have jurisdiction over its person. The circuit and appellate courts agreed, finding that the defendant did not carry on business within Illinois with sufficient regularity to constitute "doing business" in the State. The court found it of no consequence to its analysis that the defendant may have earned $5 million in Illinois because "substantial revenues from sales in Illinois *** are not enough to satisfy 'doing business' in a contract action." *Rokeby-Johnson*, 230 Ill. App. 3d at 319, 594 N.E.2d at 1198; see also *Kadala v. Cunard Lines, Ltd.* (1992), 226 Ill. App. 3d 302, 589 N.E.2d 802 (holding that substantial revenue earned from extensive advertising in Illinois does not submit a foreign corporation to jurisdiction of State courts under the "doing business" test).

Rather than emphasizing the amount of the financial benefit it derives from the consumers of Illinois, the cases seem to indicate that the key consideration is the corporation's temporal relationship with the State. (*Colnar v. Baldknobbers, Inc.* (1982), 107 Ill. App. 3d 234, 238, 437 N.E.2d 718, 721 ("Cases cited by plaintiff reveal that defendant foreign corporations were found amenable to process because of the extensiveness of their activities in Illinois ***").) For example, in *Cook Associates*, the court made no mention of the balance sheet of the defendant, but found that three visits to Illinois trade shows and an interview with a prospective employee in the State did not amount to the conduct of business here with such regularity that would support an inference of consent to jurisdiction or a constructive presence in Illinois.

Similarly, in *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561, the appellate court, in affirming the trial court's grant of the defendants' motion to quash service for want of jurisdiction, looked to the extent of the defendants' contacts in this State, one of which was a ski resort in Wisconsin. It found that the Wisconsin corporation advertised in Illinois, maintained an Illinois phone number, sold its services through local ski shops, purchased billboard space in Illinois from an Illinois company and participated in an annual ski trade exhibition. The court found these

activities insufficient to manifest a consent to jurisdiction, not because the ski lodge derived slight business from its Illinois ventures, but because its actual presence in Illinois, through its agents in the State, was occasional in the temporal sense. Compare *Dal Ponte v. Northern Manitoba Native Lodges, Inc.* (1991), 220 Ill. App. 3d 878, 884, 581 N.E.2d 329, 333 (declining to find personal jurisdiction over a Canadian corporation which solicited customers at Illinois fishing shows and accepted reservations because its relationship with the State was "more akin to occasional or casual activity"); *Baldknobbers, Inc.*, 107 Ill. App. 3d at 238, 437 N.E.2d at 721 (finding that a country music promoter was not subject to court's jurisdiction because its two to five annual solicitation visits to the State constituted at best only a sporadic or occasional presence here), with *Huffman v. Inland Oil & Transport Co.* (1981), 98 Ill. App. 3d 1010, 424 N.E.2d 1209 (holding that a foreign corporation was amenable to process since the record disclosed a regular pattern of its plying the waterways of the State).

■ Here, although Appleton does not earn a great amount of money in Illinois, its return from this State is constant and its past actions in the State do have a measure of permanence. It has an arrangement with an Illinois firm which goes far in ensuring that any Raynor overhead garage door installed within a 15-mile radius of Griffin, Indiana, including that portion which juts into Illinois, will be performed by Appleton. Aside from this contractually guaranteed exclusive Illinois territory, Appleton also advertised in Illinois and maintained an Illinois phone number, contrivances all aimed at garnering business from Illinois residents. When Appleton's Illinois advertising bore fruit, it completed the work in the State and thereafter returned to Indiana with its Illinois-derived revenue.

In *Colletti v. Crudele* (1988), 169 Ill. App. 3d 1068, 1079-80, 523 N.E.2d 1222, 1229, we found that 12 annual business ventures in Illinois were sufficient to confer jurisdiction over the defendant corporation's person. In the instant appeal, the record indicates that Appleton made appreciably more of such yearly commercial excursions into Illinois. Consequently, the circuit court did not err when it denied Appleton's motion to quash service for lack of *in personam* jurisdiction.

## II

The second issue in this consolidated appeal concerns the circuit court's resolution of the motion seeking dismissal of the cause and its transfer to a more convenient forum. Chrysler Corporation and Scheidt argue that as a matter of "fundamental fairness and sensible and effective judicial administration" (*Adkins v. Chicago, Rock Island*

*& Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514, 301 N.E.2d 729, 730), the circuit court abused its discretion (see, *e.g.*, *Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 497 N.E.2d 745) in refusing to allow a transfer of this action to the circuit court of Lake County, Indiana, a forum which they contend "can better serve the convenience of the parties and the ends of justice." *Adkins*, 54 Ill. 2d at 514, 301 N.E.2d at 730.

In *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 554 N.E.2d 209, the court comprehensively reexamined the common law doctrine of *forum non conveniens,* upon which defendants base their attempt to transfer this cause to Indiana. The *Griffith* court restated that the doctrine is a creature of equity which recognizes that even though a court of one forum has jurisdiction over both the subject matter and the parties to the action, it is in the best interest of all that the court decline to exercise the power it has where another forum more closely linked to the case has an equal ability to hear the action. In the case at bar, it is uncontroverted that the circuit court of Lake County, Indiana, which is where plaintiffs sustained their injuries and loss, would be invested with jurisdiction over all the parties and would have the power to try the case.

■ Accordingly, under the classic *forum non conveniens* test, reacknowledged and relied upon in *Griffith* and most recently in *Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 568 N.E.2d 883, this court must balance a variety of factors, which are loosely grouped as either public or private concerns, to determine whether this cause should be transferred to Indiana.

> "Private interest factors to be considered are the convenience of the parties, the relative ease of access to sources of proof, the accessibility of witnesses, and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' [Citations.]
>
> Relevant public interest factors include the administrative difficulties caused when litigation is handled in congested venues, the unfairness of imposing jury duty upon residents of the county with no connection to the litigation, and an interest in having localized controversies decided locally. [Citation.]" (*Griffith*, 136 Ill. 2d at 105-06, 554 N.E.2d at 211.)

Another consideration not spelled out by *Griffith* but which is generally recognized to be pertinent to this evaluation is which forum's law will govern the case. *McClain v. Illinois Central Gulf R.R. Co.* (1988), 121 Ill. 2d 278, 520 N.E.2d 368; *Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 506 N.E.2d 1291.

The final factor to be considered is the healthy deference which must be paid to the plaintiff's qualified right to choose the forum for

his or her cause of action. (*E.g., McClain*, 121 Ill. 2d 278, 520 N.E.2d 368.) It is because of this deference that the factors discussed above must weigh importantly in favor of another forum before the plaintiff's choice of forum will be disturbed. (*Grachen v. Zarecki* (1990), 200 Ill. App. 3d 336, 558 N.E.2d 132.) This bias toward plaintiff's choice has rendered the *forum non conveniens* analysis "an unequal balancing test" which, at least initially, disfavors transfers to other fora. *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 366, 456 N.E.2d 98, 101.

In the case at bar, it would appear that the only factor which weighs in favor of leaving the action in the circuit court of Cook County is that it is plaintiffs' chosen forum. Plaintiffs suggest that in addition to this important factor, we should also take account of the fact that most of the witnesses who will testify will either be the doctors who treated Paula in Chicago or other out-of-town experts. They assume that the foreign witnesses will probably fly into this region and therefore will likely arrive in the area at either O'Hare or Midway airport. They argue accordingly that since Cook County is either home to or, with its extensive transportation facilities, much more readily accessible to the key witnesses in this case, it is the best forum for the action as a whole.

In making this argument, plaintiffs, like the circuit court before them, focus entirely on the products liability action against Chrysler Corporation. Because of this lack of discernment, they omit reference to the negligence action pending against Scheidt, who joined with Chrysler in the motion seeking dismissal and transfer to Lake County, Indiana, and whose convenience must also be considered by this court. In the negligence action, with the exception of plaintiffs and those other individuals riding with them in the van, all of the occurrence witnesses, including the police who responded to the accident and the two eyewitnesses, are residents of Lake County, Indiana. These witnesses cannot be compelled to testify in Illinois (see *Whitley v. Lutheran Hospital* (1979), 73 Ill. App. 3d 763, 392 N.E.2d 729 (observing that a subpoena is of no effect unless issued by a court which had *in personam* jurisdiction over the individual so compelled to testify)), and their testimony will be vital to the assessment of Scheidt's liability. Also, the van which is the subject matter of the products liability action, although currently garaged in Cook County is, according to defendants, closer to the courthouse in Lake County, Indiana, than it is to the Daley Center, an assertion which plaintiffs do not contest. All these factors support defendants' contention that Lake County, Indiana, is better suited to hear this case.

Even plaintiffs' proposed private reasons for keeping the action

in Cook County fail to impress. First, the supreme court has intimated that the proximity of airports to the chosen forum is not a factor warranting substantial consideration in deciding whether one forum is preferable to another, thus undercutting the central reason plaintiffs contend Cook County is best suited to hear this case. (See *Boner*, 142 Ill. 2d at 533-34, 568 N.E.2d at 888; *Griffith*, 136 Ill. 2d at 112, 554 N.E.2d at 214.) Additionally, the court has suggested that the location of experts is not entitled to any great weight when performing the balancing test for *forum non conveniens* since a plaintiff or defendant could readily circumvent the goals of the doctrine through the careful choice of certain potential experts, a decision which would be based more on their domiciles than on their expertise. (*Griffith*, 136 Ill. 2d at 112, 554 N.E.2d at 214, citing *Bland*, 116 Ill. 2d at 227, 506 N.E.2d at 1295.) In the instant action, we note that with the exception of the medical experts who have previously treated Paula in Chicago or Alabama, plaintiffs have not as yet disclosed who their experts will be or from where they will come. Consequently, the trial court's belief that they will be flying into Chicago was based on its unfounded speculation and conjecture. Regardless, their residence is rather meaningless to our analysis since a compensated expert would be more inclined to testify wherever instructed, while an unpaid and unsubpoenable occurrence witness is less likely to endure the inconvenience of coming from Indiana to Chicago to do the same. Clearly then, the private factors tend to support a dismissal and transfer to Lake County, Indiana.

The public factors also appear to favor transferring this case to Lake County, Indiana. First and foremost, the parties agree that Indiana substantive tort law will control the outcome of this case. It has been suggested that the choice of law question should be given considerable weight in determining the best of available forums. (*DeVries v. Bankers Life Co.* (1984), 128 Ill. App. 3d 647, 471 N.E.2d 230.) Next, defendants included with their motion for dismissal and transfer statistics showing that the Lake County court is substantially less congested than the circuit court of Cook County, where the average time in 1989 to complete a personal injury action tried before a jury was 84.3 months.

With respect to the one factor which sides with plaintiffs' position, which is the deference due to their decision to try this case in Cook County, not even this factor overwhelmingly tips the scale in their favor. The supreme court has held that where the plaintiff is not a resident of the forum county, her selection will not receive the same respect it otherwise would command were she a resident thereof. In *Griffith*, the court explained that it may be presumed that

a plaintiff's home forum is reasonably convenient to her, and that this is what accounts for her opting to file her case there. But this presumption is necessarily dissipated, or is at least seriously attenuated, when the plaintiff is from a foreign jurisdiction and must face the hardship of travel in order to have her action heard. (*Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 214; *Franklin v. FMC Corp.* (1986), 150 Ill. App. 3d 343, 348, 501 N.E.2d 887, 890.) Here, as residents of Georgia who returned there after treatment in Chicago, it is exceedingly unlikely that the plaintiffs elected to try this case in Cook County, Illinois, largely because this forum is any more convenient for them than its next-door neighbor, Lake County, Indiana, would be.

In *FMC Corp.*, we found that the circuit court abused its discretion by denying the defendant's motion for dismissal and intrastate transfer to Vermilion County due to the fact that Cook County had, at best, merely tenuous links to the litigation. As in the instant case, the plaintiffs, who were nonresidents, filed suit in the circuit court of Cook County against two foreign corporations for injuries sustained outside of Cook County. Like defendant Chrysler Corporation, both corporations conducted business throughout the State but maintained their registered agent in Chicago. We considered that fact and that the plaintiff would be presenting the testimony of medical experts who were from Chicago insufficient to overcome the strong links that the action had with Vermilion County. It was that county where, *inter alia*, the accident occurred and from which many of the witnesses would come. Here, the links this action has with Cook County are equally insubstantial and its ties to Lake County, Indiana, are at least as strong as those in *FMC Corp.*, which persuaded us there that the action should be heard in Vermilion County. Therefore, the circuit court abused its discretion when it denied defendants Chrysler and Scheidt's motion to dismiss based on Lake County, Indiana, being a more convenient forum.

For the foregoing reasons, in No. 1—92—1028, we affirm the court's denial of the motion to quash service on Appleton. In No. 1—93—0043, we reverse the circuit court's denial of the motion to dismiss and transfer the action against Chrysler and Scheidt to Lake County, Indiana, and remand the cause for entry of an order to grant that motion. Our ruling in No. 1—93—0043, of course, depends upon defendants' satisfaction of the conditions outlined in Supreme Court Rule 187(c)(2) (134 Ill. 2d R. 187(c)(2)) in the event that plaintiffs elect to refile the action in the court of Lake County, Indiana.

Affirmed in part; reversed in part and remanded.

DiVITO, P.J., and HARTMAN, J., concur.